ANNIE FUNK, Administratrix, v. ST. PAUL CITY RAILWAY COMPANY.[1]

June 27, 1895.

Nos. 8982—(96).

**Street-Railway—Negligence of Fellow Servant.**

> Laws 1887, c. 13 (G. S. 1894, § 2701), provides that every railroad corporation owning and operating a railroad in this state shall be liable for damages sustained by an agent or servant by reason of the negligence of any other agent or servant. *Held*, that this law is not applicable to a street-railway corporation, although its line is operated by cable.

**Statutes—Construction.**

> Where the language of a statute is in any manner obscure or of doubtful meaning, we may recur to the history of the time when it was enacted, and seek in that history for the mischief and defect which the statute was intended to remedy; and "when the words of a statute are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the object and remedy in view." Potter's Dwar. St. 195, note 13.

**General Verdict—Erroneous Charge.**

> Where there are several material issues tried, and the verdict is a general one, it cannot be upheld if the trial court gave the jury an erroneous charge upon any one of the issues.

Appeal by defendant from an order of the district court for Ramsey county, Kelly, J., denying a motion for a new trial. Reversed.

*Munn, Boyesen & Thygeson,* for appellant.

The word "railroad" as used in Laws 1887, c. 13, does not include street railways. 23 Am. & Eng. Enc. Law, 316; Reiche v. Smythe, 13 Wall. 162; County Seat of Linn Co., 15 Kan. 500; Robbins v. Omnibus R. Co., 32 Cal. 472; Whitcomb v. Rood, 20 Vt. 49. The practical construction placed by state officers on the term under the various acts in which it occurs is entitled to weight. 23 Am.

[1] Reported in 63 N. W. 1099.

& Eng. Enc. Law, 339, 340. Where the language of a statute is doubtful, resort may be had to surrounding circumstances, the history of the times and the mischief intended to be remedied. Smith v. Townsend, 148 U. S. 490, 13 Sup. Ct. 634; United States v. Union Pac. R. Co., 91 U. S. 72; Preston v. Browder, 1 Wheat. 115; 23 Am. & Eng. Enc. Law, 336, par. f; Taylor v. Taylor, 10 Minn. 81 (107); Green v. Graves, 1 Doug. (Mich.) 351; People v. Supervisors of Columbia, 43 N. Y. 130; Omaha Horse R. Co. v. Cable T. Co., 30 Fed. 324. That there is a marked distinction between the terms "railroad" and "street railway" is apparent from the following cases: Carli v. Stillwater, S. R. & T. Co., 28 Minn. 373, 10 N. W. 205; Newell v. Minneapolis, L. & M. R. Co., 35 Minn. 112, 27 N. W. 839; Williams v. City Electric St. R. Co., 41 Fed. 556, 43 Am. & Eng. R. R. Cas. 215; Front St. Cable R. Co. v. Johnson, 2 Wash. 112, 25 Pac. 1084, and 47 Am. & Eng. R. R. Cas. 287; Louisville & P. R. Co. v. Louisville City R. Co., 2 Duv. 175; Thomson-Houston Electric· Co. v. Simon, 20 Ore. 60, 25 Pac. 147, and 47 Am. & Eng. R. R. Cas. 51; In re New York D. R. Co., 107 N. Y. 42, 14 N. E. 187, and 32 Am. & Eng. R. R. Cas. 202; People v. Newton, 112 N. Y. 396, 19 N. E. 831, and 38 Am. & Eng. R. R. Cas. 391. See Lavallee v. St. Paul, M. & M. R. Co., 40 Minn. 249, 41 N. W. 974; Johnson v. St. Paul & D. R. Co., 43 Minn. 222, 45 N. W. 156; Pearson v. Chicago, M. & St. P. R. Co., 47 Minn. 9, 49 N. W. 302; Delude v. St. Paul City R. Co., 55 Minn. 63, 56 N. W. 461.

*George C. Lambert* and *S. P. Crosby*, for respondent.

BUCK, J. A material and difficult question for us to determine is whether Laws 1887, c. 13 (G. S. 1894, § 2701), in regard to damages arising by reason of a fellow servant, is applicable to the case under consideration. That law reads as follows: "Every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof by reason of the negligence of any other agent or servant thereof without contributory negligence on his part when sustained within this state."

The defendant is the St. Paul City Railway Company, and in the complaint it is described as the owner of the Seventh street cable line in the city of St. Paul, which said line of cable railway extends

from Wabasha street eastward to a point on Dayton's Bluff in said city, and that the cars and grip cars running thereon are operated by means of a cable, which cable runs in a conduit underneath the tracks of the car line. It is also alleged that the plaintiff's intestate was a plasterer by trade, and employed by the defendant to plaster the inner walls of the conduit through which the cable runs, and that while so engaged he was killed, solely through the negligence of the defendant. The jury returned a verdict in favor of the plaintiff for the sum of $2,500, and the defendant appeals.

The defendant is a street-railway corporation, but whether it is included in the term "railroad," as used in the law of 1887, is a debatable question. The common understanding of a railroad is that it is a graded road or way on which rails of iron or steel are laid for the wheels of cars to run upon, carrying heavy loads, usually propelled by steam. Railroads in a rude form were in use as early as 1676, but it was not until 1829, when successful experiments in the use of locomotives were made, that they first began to be extensively constructed; and it is only within recent years that another class of railroads, namely, those laid down in the streets of towns and cities, have become very numerous. 2 Bouv. Law Dict. tit. "Railroads."

Judge Robertson, in Louisville & P. R. Co. v. Louisville City R. Co., 2 Duv. 175, says: "A railroad is for the use of the universal public in the transportation of all persons, baggage and other freight. A street railway is dedicated to the more limited use of the local public, for the more transient transportation of persons only, and within the limits of the city. In the technical sense, therefore, a street railway is not a railroad. * * * A 'railroad' and a 'street railroad,' or way, are, in both their technical and popular import, as distinct and different things as a road and a street, or as a bridge and a railroad bridge; and it has been authoritatively adjudged that the simple term 'bridge' means a viaduct in a road dedicated to common use, and that the qualified phrase 'railroad bridge' means a viaduct constructed for the exclusive use of railroad transportation." This decision was made in 1865, and involved the construction to be given to a provision in a railroad charter which provided that no other railroad should be constructed between two named points in a city, the court holding that such

provision did not prohibit the construction of a street railway between the points named.

Perhaps it may be conceded that, technically speaking, the term "railroad" would include a street railway, so far as its roadbed is made of iron or steel rails for wheels of cars to run upon; but where there is doubt about the true meaning of the word or term used in the law, the legislative intent is not to be determined from that particular expression, but from the general legislation upon the same subject-matter.

It is claimed by the appellant's counsel, and not denied by the counsel for the respondent, and such we believe to be fact, that on February 24, 1887, when the general law of that year was passed, there were no cable or electric street railways in existence in this state. If so, what was the legislative intent in using the word "railroad" in the law of 1887, to be deduced from the whole and every part of the statute taken together, upon the subject of railroads? "When the words of a statute are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the object and remedy in view." Potter's Dwar. St. 194, note 13. What was the mischief felt which resulted in the passage of this law? Was it a danger known, or one unknown? Was it a danger then felt and realized, or one that might possibly arise in the future? We must assume that it was dealing with, and acting upon, existing facts within its knowledge. Of course, if the language used was entirely free from ambiguity, and broad enough to include unknown things which might spring into existence in the future, they would be deemed to come within, and be subject to, the evident meaning of the terms used.

Following this line of thought, we quote the case of Bridge Proprietors v. Hoboken Co., 1 Wall. 116, in which Mr. Justice Miller uses this language: "It does not follow that when a newly-invented or discovered thing is called by some familiar word, which comes nearest to expressing the new idea, that the thing so styled is really the thing formerly meant by the familiar word.  *  *  *  The track upon which the steam cars now transport the traveler or his property is called a road, sometimes, perhaps generally, a railroad. The term road is applied to it, no doubt, because in some sense it is used

for the same purpose that the roads had been used. But until the thing was made and seen, no imagination, even the most fertile, could have pictured it from any previous use of the word road. Some call the inclosure in which passengers travel on a railroad a coach, but it is more like a house than a coach, and is less like a coach than are several other vehicles which are rarely, if ever, called coaches. It does not therefore follow that when a word was used in a statute or a contract 70 years since, that it must be held to include everything to which the same word is applied at the present day."

And where the language of a statute is in any manner obscure or of doubtful meaning, we may recur to the history of the time when it was enacted, and seek in that history for the mischief and defect which the statute was intended to remedy. In the case of United States v. Union Pac. R. Co., 91 U. S. 72, the court said: "Courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it." See, also, Smith v. Townsend, 148 U. S. 490, 13 Sup. Ct. 634; Aldridge v. Williams, 3 How. 924; Preston v. Browder, 1 Wheat. 115.

But if we assume that, at the time of the passage of the law of 1887, the history of street cars was generally known, and their use, method of operation, and dangers therefrom well understood, can it be fairly and reasonably held that it was the legislative intent to apply the term "railroad" to street railways? It is a matter of common knowledge that street cars operated by cable or electricity are more readily managed than those operated by steam, where long passenger and freight trains, with their weight and momentum, are not so easily controlled. Street cars are generally run separately, rarely with more than two or three coupled together, and there is but little danger of collision. They do not run so rapidly, their movements are easily and quickly checked, and the roadbeds are constructed upon level or graded streets, without deep cuts, and generally lighted. Nor do street railways carry freight. The greatest railroad hazard and danger of personal injury to railroad employés arises from operating freight trains. There is no such danger in operating street railways, whatever may be the motive power, because they do not carry freight. Especially is the. danger in coupling freight cars

entirely absent.    They get their business from the street, usually in populous cities, where passenger travel is the only business carried on.    Street cars do not usually run beyond the city limits, and none run beyond the state boundary.

The words in the law of 1887 making a railroad corporation operating a railroad in this state liable for damages "when sustained within this state," were undoubtedly aimed at the railroads operated by steam where their lines extended beyond the jurisdiction of the state.    It is true these restrictive words would include railroads operated by steam wholly within the state, but they were inserted to prevent the bringing of suits where the injury was sustained upon railroads outside of this state, but where the lines of the same railroad come within the boundary of our own state.    Hence the words "when sustained within this state" evidently refer to railroads operated by locomotives, and it was such railroads the legislature had in contemplation when this term was used.

Through our territorial and state legislation, the term "railroad" has acquired a definite and well-understood meaning, and it has never been understood to include street railways.    It is usually applied to the ordinary steam railroad of commerce; and when there has been legislation in regard to street railways, they have been so designated. In Elliott, Roads & S. p. 557, it is said that:    "The distinctive and essential feature of a street railway, considered in relation to other railroads, is that it is a railway for the transportation of passengers and not of freight.    As we employ the term and desire it to be understood, it excludes the idea of the carriage of freight, for we do not believe that a railroad over which heavily laden freight trains are drawn can be considered a street railway."

We consider the words "railroad" and "railway" as synonymous, and that they are generally used interchangeably, as this court has heretofore decided in State v. Brin, 30 Minn. 522, 16 N. W. 406.    If in the future street railways shall be used for carrying freight, as they undoubtedly will be, with all of its attendant hazards and dangers, it will be within the province and discretion of the legislature to make the law of 1887 applicable to street railways.    Or if, before that time, it considers the application of that law to the present method of operating street railways a necessary, wise, and judicious one, it

can do so by such specific and definite terms that there can be no need of construction or interpretation.

If we were to hold that the term "railroad" in the law of 1887 applied to street railways because the word is broad enough to cover all roads constructed of iron or steel rails for wheels of cars to run upon, we see no reason why it should not be so construed whenever found in the other legislation of this state. This would require street railways to build depots and waiting rooms for passengers, for there is just as much reason to make the word "railroad" applicable in this respect as to personal injury cases. This is but one of the very many instances where by the use of the word "railroad" the company is required to perform certain duties, in respect to which it cannot reasonably be said that the meaning of such words includes street railways. To so construe it in such instances would lead to confusion, and be a palpable violation of the legislative intent.

The respondent claims that there was sufficient evidence to justify the finding of the jury, without reference to the fellow-servant act of 1887. The verdict was a general one, and this court cannot say whether the jury based its finding upon the ground that the death of Henry Funk was caused by the negligence of a fellow servant or not. It may be that the jury founded their verdict upon the erroneous instructions of the court that the defendant would be liable for the negligence of a fellow servant under the law of 1887. There were several issues tried, and where there was such an erroneous instruction in regard to a vital one, it cannot be disregarded by this court upon the ground that possibly the jury might have founded their verdict upon some other issue.

As to whether the defendant was guilty of negligence in operating its railroad we express no opinion. That issue can be determined in the new trial, which must be granted by reason of the erroneous ruling of the court below upon the question we have discussed.

The order appealed from is reversed.

MITCHELL, J. In concurring in the foregoing opinion, my only excuse for adding anything is the importance of the question involved. The question is wholly one of legislative intent. Did the legislature intend to include street railroads within the provisions of the act?

In its original literal sense the word "railroad" means a road with

rails laid on it, upon which the wheels of carriages or vehicles run. In this sense it would, of course, include street railroads. But according to common popular usage the word "railroad," without any qualifying or explanatory prefix, is generally understood as referring exclusively to ordinary commercial railroads, used for the transportation of both passengers and freight, and whenever street railroads are referred to, the word "street" is prefixed. This is also the general legislative use of the words. In all the legislation of this state I have found no act (unless this be an exception) in which the word "railroad" or "railway," standing alone, was not evidently intended to apply exclusively to ordinary commercial railroads. Neither have I found an act (unless this be an exception) which had reference to street railroads in which the word "street" was not prefixed. I do not claim that there might not be a law enacted where it would be evident from its subject-matter and object that the word "railroad" was intended to include street railroads. But, in my opinion, this is clearly not such a case.

The occasion for enacting this law was the peculiar risks incident to the operation of railroads, and especially those resulting from the negligence of fellow servants. The remedy sought to be attained was better protection to railroad employés from these peculiar hazards. The peculiar conditions which were considered to require peculiar legislation for the protection of employés engaged in the operation of railroads are too familiar to require repetition. Generally, it may be stated that the most cogent ones were the high rate of speed at which trains are run, the great momentum acquired by long and heavy trains, where an accident to one car is liable to wreck the entire train; the peculiar dangers incident to the operation of freight trains; that the roads are often built upon high embankments or trestles where an accident would be peculiarly dangerous; the danger of collisions, owing to the fact that numerous trains are operated over the same tracks; the vast number of employés of different grades, engaged in different lines of work, many of whom are necessarily personally unknown to the others.

The mere fact that steam was used as a motive power was not, in and of itself, either the occasion, or the justification, for the enactment of a law establishing for railroad companies a special rule of liability for the negligence of their servants. If one of these companies

was to substitute electricity for steam as its motive power, it would still be subject to the provisions of the act.   In the case of street railways, whatever be the motive power, the peculiar conditions. above referred to either do not exist at all, or, at most, exist only in a very modified degree.   This is a fact of such common knowledge that it need not be more than stated.   The question is not whether the legislature had the power to place street railroads in the same class with ordinary commercial railroads, but whether they have in fact done so.

The difference in conditions affecting the risks to which employés are exposed is sufficiently substantial to authorize the legislature to make the law applicable to ordinary commercial railroads alone, and furnishes, in my judgment, ample reason for concluding that they so intended, and that they used the word "railroad" in its ordinary popular sense, and in the sense in which they themselves had generally used it in other statutes.

It may be said that in the case of some short line of railroad, exceptionally situated, the conditions involving dangers to employés might be exactly similar both in kind and degree to those existing on some lines of street railway.   It is difficult to conceive of such a case. But it is a sufficient answer to the suggestion to say that it simply shows that a classification of this sort, like everything else human, cannot be wholly perfect, and that in a class which is marked by substantial characteristics in varying degrees it will often happen that those of one member of a class may scarcely differ at all from those of some members of another class.   But the line must be drawn somewhere; and if the difference in conditions generally existing between ordinary commercial railroads and street railroads is substantial, that is all that constitutional rules require as a basis of classification.   Neither can I see any middle ground between excluding all street railways from the operation of the act and including them all, which would be maintainable on principle, or capable of convenient practical application.