THE FIDELITY LOAN AND TRUST COMPANY, as Trustee v. HARRY E. DOUGLAS, Appellant.

Judgments: RAILROADS: *Street railways.* A street "railway corporation" is not within Code 1873, section 1309, providing that a judgment against any "railway corporation" for any injury to any person or property shall be a lien within the county where recovered, on its property, prior to the lien of any mortgage or trust deed executed since July 4, 1862, in view of the fact that there were no street railways in the state when the original act from which this section was taken was passed, and that the context apparently excludes street railways.

SAME. The fact that the franchise of a corporation denominated as a street railway company does not limit its operation to the city, but includes the territory adjacent to the city, and that it is

NOTE—See section 2075, Code, for statutory change.—REPORTER.

2   authorized to carry freight, baggage and express matter, does not make it a commercial railway company as distinguished from a street railway company, and so bring it within the scope of Code 1873, section 1309, giving judgments for personal injuries against commercial railway corporations preference over prior mortgages, where there is nothing to indicate that it has done or intended to do any business except that usually and properly done by street railway corporations.

LADD, J., took no part.

WATERMAN, J., dissenting.

*Appeal from Woodbury District Court.*—HON. SCOTT M. LADD, Judge.

## THURSDAY, JANUARY 27, 1898.

ACTION in equity to foreclose a mortgage, and for other equitable relief. A demurrer to the petition was filed and overruled, and from that ruling the defendant, Douglas, appeals.—*Affirmed.*

*Argo, McDuffie & Argo, Kennedy & Kennedy, J. S. Lathrop,* and *Kennedy, Jackson & Kennedy* for appellant.

*Charles A. Clark & Son* and *S. E. Hostetter* for appellee.

ROBINSON, J.—I.   On the first day of August, 1890, the Sioux City Street Railway Company executed the mortgage in suit to the plaintiff as trustee, to secure bonds of the street railway company, the issuance of which, to the amount of one million dollars, it had authorized. The mortgage was recorded on the second day of September, 1890, and bonds which it was designed to secure, to the amount of five hundred and twenty-five thousand dollars, were issued. Of that amount, bonds for three hundred and fifty thousand dollars have been sold, and are owned by good-faith purchasers, and the remainder have been pledged to secure outstanding indebtedness of the street railway

company. The property mortgaged included the fran-chise of the street railway company, its roadbed and street railway and appurtenances, including both real and personal property. On the fourth day of June, 1892, the defendant, Douglas, obtained judgment against the street railway company for personal injuries inflicted upon him, in the sum of three thousand five hundred dol-lars, with interest and costs. That judgment is unpaid, and the controlling question presented by the demurrer, and to to be determined by us is, which one of the two liens, created by the mortgage and the judgment, is senior to the other. It is not denied that the lien of plaintiff is first in point of time, but it is claimed by the appellant that the lien of his judgment is made superior to that of the plaintiff by section 1309 of the Code of 1873, which is as follows: "A judgment against any railway corporation for any injury to any person or property, shall be a lien within the county where recovered, on the property of such corporation, and such lien shall be prior and superior to the lien of any mortgage or trust deed executed since the fourth day of July, A. D. 1862." The Sioux City Street Railway Company is a corporation organized under the laws of this state, with power "to locate, construct, maintain, and operate street railways within and adjacent to the city of Sioux City," and has constructed, maintained, and operated street railways within that city. Is it a "railway corporation," within the meaning of the stat-ute quoted? So far as its provisions are material in this case, they were first enacted as a part of section 9 of chapter 169 of the Acts of the Ninth General Assembly. That act was entitled, "An act in relation to the duties of railroad companies." An examination of it shows that but two of the ten sections, exclusive of the repeal-ing clause which it contained, could have had any refer-ence to street railways. Eight sections refer clearly to

commercial railroads. Sections 7 and 9 use the term
"every railroad company," and, had the context justi-
fied such an interpretation, might he held to refer to
street railway companies. But those sections must be
construed in connection with the remaining one of the
chapter, and, when that is done, the most evident and
satisfactory conclusion is that nothing contained in the
chapter was designed to apply to street railway cor-
porations. That conclusion is supported to some extent
by the conceded fact that, when the statute was enacted,
there were no street railways in this state, and, therefore,
there was no occasion to legislate in regard to them.
It is said in Sutherland, Statutory Construction, section
241, in reference to statutes, that: "The application of
particular provisions is not to be extended beyond the
general scope of a statute, unless such extension is man-
ifestly designed. Legislatures, like courts, must be
considered as using expressions concerning the thing
they have in hand; and it would not be a fair method
of interpretation to apply their words to subjects not
within their consideration, and which, if thought of,
would have been more particularly and carefully dis-
posed of. The mere literal construction ought not to
prevail, if it is opposed to the intention of the legis-
lature apparent from the statute.  *  *  *  The inten-
tion of an act involves a consideration of its subject-
matter, and the change in, or an addition to, the law
which it proposes; hence the supreme importance of
the rule that a statute should be construed with refer-
ence to its general purpose and aim." When the Code
of 1873 was enacted, the most important of the provis-
ions of chapter 169 of the Acts of the Ninth General
Assembly were included, with numerous other provis-
ions, in the chapter relating to railways. Section 9
of chapter 169, with some modifications, not material to
any question involved in this case, appears as section

1309 of the new chapter. Street railways were in existence in this state when the Code of 1873 took effect, and it is urged, if it be true that section 9 of the chapter 169, aforesaid, did not apply to street-railway corporations, the re-enactment of the section gave it that effect. We are of the opinion, however, that the terms "railway" and "railways," where used in the chapter of the Code of 1873 referred to, are always intended to designate one or more of the commercial railways,—that is, railways designed for the transportation of passengers and freight from place to place within the state, or from state to state, or both, and upon which, as a rule, the transportation is effected by means of trains of cars moved by locomotive engines,—and not railways which are designed chiefly for the carriage of passengers from point to point in a single city or town. And we are of the opinion that the term, "railway corporations," as used in that chapter, refers only to corporations which own or operate such commercial railways. Certainly such corporations are intended in every instance where the context makes clear the character of the corporation intended, and we are not authorized to presume that the term is used in a different sense when its meaning is not so definitely expressed. The words "railroad" and "railway" may undoubtedly be so used as to mean a street railway, but by popular usage, when used without qualifying words, they are understood to refer to commercial railways, the word "street" being almost invariably used in connection with "railway" to designate a street railway. See *Sears v. Railway Co.*, 65 Iowa, 744; *Funk v. Railway Co.*, 61 Minn. 435 (63 N. W. Rep. 1099). And the history of legislation in this state shows that it has conformed in great measure to popular usage, and that, as a rule, in statutes designed to apply to street railways, they have been designated by that name. Nothing contained in the chapter under consideration makes it at all probable that any part of

it was intended to apply to street railways or to street railway corporations.

Our attention has been called to various decisions of this court and of other courts, but we do not find anything in any of them which is in conflict with the views we have expressed. It must be remembered that the true application of the statute in question depends upon the legislative intent, which is to be ascertained by means of well-known rules of interpretation, and not alone from the abstract and permissible definitions of terms used. The case of *City of Clinton v. Clinton & L. H. Ry. Co.*, 37 Iowa, 61, especially relied upon by appellant, did not arise under the statute in controversy, and, although some language was used in the opinion which tends logically to support the claim made by the appellant, yet nothing was actually decided in that case which is in conflict with the conclusion we reach in this. It will be understood that the interpretation of the statute we have adopted applies only to section 1309 of the Code of 1873, and the statute of which that was a revision, and not to the corresponding provision of the existing law which is found in section 2075 of the Code (1897). That applies in terms to street railway corporations.

Some claim is made in argument that the Sioux City Street Railway Company is a commercial, and not a street, railway company, for the reason that its franchise does not limit its operation to the city of Sioux City, and for the further reason that it is authorized to carry freight, baggage, and express matter. But we do not find anything in the record to justify the conclusion that it has done, or intends to do, any business excepting that which is usually and properly done by street railway corporations. We conclude that the demurrer to the petition was properly sustained.

II. It is shown that Belinda Marshall and William T. Parmely appeared in this action, and demurred to the petition, that their demurrers were overruled, and that they have appealed. They are the owners of judgments for personal injuries, rendered against the street railway company which are unpaid. A stipulation signed by the parties and filed in this case shows that their legal rights are the same as those of Douglas, and are to be adjudicated at this time. Therefore, what we have said applies to their respective claims. The orders of the district court as to all of the appellants are AFFIRMED.

LADD, J., took no part.

WATERMAN, J. (dissenting).—I cannot yield my assent to the construction given by the majority of the court to section 1309, Code 1873. Whatever may be said of the other portions of the act in which this section first appeared, or of its context in the Code of 1873, it must be admitted that there is nothing in the language of this particular section to restrict its meaning to any class or kind of railways. It may be conceded that when this statute was first enacted there were no street railways in Iowa, and that urban railways, as they now exist, were not within the contemplation of the most speculative member of the Ninth General Assembly. But this is not the only, or, indeed, the best test to apply in order to ascertain the legislative intent as embodied in this section. By its enactment the general assembly sought to correct an evil caused, not by a particular kind of railways, but by a certain class of mortgages, and these instruments are the same in character, whether executed by commercial or street railways. They are always for very large amounts. They cover all species of railway property, including money on hand and future earnings or profits. If they can be set

up as a bar to the satisfaction of a judgment in favor of one who has suffered injury to person or property through the negligence of the railway company, then such involuntary creditor is practically denied all relief. To say that the judgment creditor can sell, subject to the mortgage, or redeem from it, would be to add ridicule to wrong. In this case, the mortgage debt exceeds five hundred thousand dollars, and the judgment amounts to but three thousand five hundred dollars. This was the evil, as I view it, that the general assembly sought to remedy by the adoption of this provision. Being remedial in its character, the section should receive a broad and liberal construction. In interpreting such statutes, it is said: "The old law, the mischief, and the remedy, must be kept in mind. That which is within the mischief intended to be remedied is considered within the statute, though not within the letter; and that which is not within the mischief is not within the statute, though within the letter." *Stephens v. Railroad Co.*, 36 Iowa, 327; *Haskel v. City of Burlington*, 30 Iowa, 232; *The "Kentucky" v. Brooks*, 1 G. Greene, 398; *Kaiser v. Seaton*, 62 Iowa, 463; 23 Am. & Eng. Enc. Law, p. 414, and cases collected. Here the railway mortgage is clearly within the mischief, and just as clearly within the letter of this remedial section. To restrict the statute to a particular class of "mischief makers," rather than apply it to the "mischief," by whomsoever done, is to adopt a narrow and illiberal rule of construction. The fact that this section is found in the statutes among the provisions that relate admittedly to commercial railways only, or that the other sections of the chapter in which it was originally enacted could apply only to railways operated with steam as a motive power, ought not to control us. *Cook v. Association*, 74 Iowa, 746. In this case an act of three sections was considered. The first and second sections were general in terms. The third section, by

its language, was confined to fire insurance companies only. But, because section 2 was remedial in character, we held it to apply to life insurance companies also. In *Iowa Union Tel. Co. v. Board of Equalization*, 67 Iowa, 250, it was held that telephone companies could be taxed under the statutes providing for the taxation of telegraph companies. Neither should it make any difference, in our interpretation of the statute, that the section has been amended by the Code so as expressly to include mortgages-made by street railways, for it was not the province of the Twenty-sixth General Assembly to give a construction to existing laws that should in any way bind this court, or even influence its action.

II.    Another thought that we may well conceive to have been in the legislative mind when section 1309 was originally adopted is that, if these mortgages could be used as shields to protect the railways from the consequences of their own negligence, it would take away one of the strongest incentives such carriers have for the exercise of diligence and care in the operation of their roads. This consideration applies with equal force to street railways.

We are not called upon here, in giving priority to the judgment, to go as far as was done in the case of *City of Clinton v. Clinton & L. H. Ry. Co., supra*, cited by the majority. In that case a horse railway was given the benefit of the provisions of the general right of way act (article 3, chapter 55, Revision 1860), which according to its literal reading, seems to apply only to commercial railways. The court in that case adopted a more liberal construction in order to confer a right than we are willing to do in order to afford a remedy. Keeping in mind the character of this section, and the fact that the mortgage in controversy is within both its letter and spirit, and it seems to me impossible to

invoke any rule of law that will sustain the conclusion of the majority. I think the judgment below should have been REVERSED.