## LINCOLN STREET RAILWAY COMPANY v. MARY J. McCLELLAN.

FILED APRIL 21, 1898. No. 7974.

1. **Street Railways: INJURY TO PASSENGER: CONTRIBUTORY NEGLIGENCE.** One cannot recover for an injury received while a passenger on a street railway if the accident from which the injury resulted was due in part to his own want of ordinary care.

2. ———: ———: ———. And in an action to recover damages in such case an instruction which informs the jury that, the injuries being shown, the carrier, to escape liability, must prove that the passenger was guilty of gross contributory negligence is erroneous.

3. ———: NEGLIGENCE. Street railways are common carriers of pas-

sengers and as such are required to exercise the utmost skill, dili-
gence, and foresight, consistent with the business in which they
are engaged, for the safety of their patrons; and they are liable
for the slightest negligence.

4. ——: ——: BURDEN OF PROOF. In an action for damages for an
injury received while being transported by a common carrier, the
injury being shown, the burden of proof is upon the carrier to
show that it was in nowise at fault.

5. ——: ——: COMMON CARRIERS: STATUTES. Section 3, article 1,
chapter 72, Compiled Statutes 1897, providing that "Every railroad
company as aforesaid, shall be liable for all damages inflicted
upon the person of passengers while being transported over its
road, except in cases where the injury done arises from the crimi-
nal negligence of the person injured," etc., has no application to
street railways.

ERROR from the district court of Lancaster county.
Tried below before TIBBETS, J.  *Reversed.*

*Ames & Pettis* and *William G. Clark,* for plaintiff in
error.

*Clark & Allen, contra.*

SULLIVAN, J.

The plaintiff Mary J. McClellan was injured while a
passenger on one of the cars of the defendant, the Lin-
coln Street Railway Company, on June 21, 1892.  Claim-
ing her injury was caused by the negligence of defend-
ant's servants, she brought this action in the district
court of Lancaster county and recovered a verdict and
judgment for $1,125.  The answer of the defendant was a
general denial, coupled with an allegation of contribu-
tory negligence.  The court instructed the jury as fol-
lows:

"3. When it once appears from the evidence that the
plaintiff was injured while a passenger upon defendant's
street car, then the burden is upon the defendant to show
by a preponderance of the evidence that such injury was
not caused by any negligence upon its part, and that
plaintiff herself contributed to the injury by her own
gross negligence, unless it should appear in establishing

47

plaintiff's own case that the injury was caused by causes beyond the control of defendant or contributed to by plaintiff's own gross negligence."

"6. It was the duty of the plaintiff when entering the car of the defendant to exercise reasonable and ordinary care in discovering the opening in the floor of the car and avoiding the same; and if you find from the evidence that plaintiff failed to do so, then it is a proper matter for you to consider in determining whether or not the plaintiff was guilty of gross negligence that contributed to the accident complained of. And if you find from the evidence that plaintiff, by her own gross, careless, and negligent acts, contributed to the injury complained of, then she cannot recover even though you should conclude from the evidence that the plaintiff was negligent as charged."

By these instructions the jury were told that if the accident was proven the defendant would be liable, unless it established by a preponderance of the evidence that it was not itself at fault and that the plaintiff's own gross negligence contributed to her injury. It is settled by the decisions of this court that street railway companies are common carriers of passengers. (*Spellman v. Lincoln Rapid Transit Co.*, 36 Neb. 890; *Pray v. Omaha Street R. Co.*, 44 Neb. 167; *East Omaha Street R. Co. v. Godola*, 50 Neb. 906.) As such they are bound to exercise for the safety of their patrons more than ordinary care. They are required to exercise the utmost skill, diligence, and foresight consistent with the business in which they are engaged, and are liable for the slightest negligence. This is the liability imposed by the common law on all carriers of passengers. (*Spellman v. Lincoln Rapid Transit Co.*, *supra; Topeka City R. Co. v. Higgs*, 38 Kan. 375; *Meier v. Pennsylvania R. Co.*, 64 Pa. St. 225; *Indianapolis & S. L. R. Co. v. Horst*, 93 U. S. 291.) The law presumes that one injured while being transported by a common carrier was injured in consequence of the latter's negligence; and to escape liability it must show that it has

discharged the full measure of its legal duty and was in nowise to blame for the accident. It need not, however, under the rules of the common law, acquit itself of all blame and in addition thereto convict the plaintiff of gross contributory negligence. This counsel for plaintiff seem to concede, but they contend that the provisions of section 3, article 1, chapter 72, Compiled Statutes 1897, are applicable to street railway companies, and, therefore, the rule stated in the foregoing instructions is correct. The section referred to is as follows: "Every railroad company, as aforesaid, shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the person injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice." The act of which this section is a part was passed in 1867 and contained five sections. The first imposes on railroad corporations a duty to erect and maintain fences along their lines for the protection of domestic animals. The second relates to the liability resulting from a failure to comply with the first. The fourth provides the manner in which summons may be served on railroad companies, and the fifth forbids them from limiting their liability as common carriers without express notice. There is nothing whatever in the title or body of the act which indicates a legislative intent to make its provisions, or any of them, applicable to street railways. When this law was enacted there was neither occasion nor demand for legislation of this character in the interests of tramway passengers. The means then employed for their transportation was the old-fashioned lagging horse car, in which the transit was not only safe but peculiarly free from every suggestion of peril. Cable traction had not yet come into use, and electricity as a propulsive power was not even within the dreams of legislative philosophy, and had no existence anywhere save, perhaps, as a dim

possibility in the minds of some ardent theorists. In the common understanding, a railroad and a street railway have always been separate and distinct things. One is a graded road over which heavy cars, running on iron or steel tracks and usually propelled by steam, carry passengers, freight, and baggage, while the other is exclusively employed for the transportation of passengers in cities and is so constructed as to interfere but little with ordinary traffic. (Elliott, Roads & Streets, 557; *Funk v. St. Paul City R. Co.*, 61 Minn. 435, 63 N. W. Rep. 1099; *Louisville & P. R. Co. v. Louisville City R. Co.*, 2 Duv. [Ky.] 175.) In the case last mentioned it is said: "A 'railroad' and a 'street railroad,' or way, are, in both their technical and popular import, as distinct and different as 'a road' and 'a street' or as 'a bridge' and 'a railroad bridge.'" And in *Bloxham v. Consumers' Electric Light & Street R. Co.*, 36 Fla. 519, the court say: "The word 'railroad,' as generally used, applies to commercial railways engaged in the transportation of freight and passengers for long distances, and, as a general rule, having steam engines for motive power, and making stops at regular stations for the receipt and discharge of freight and passengers. The term 'street railroad' applies only to such roads, the rails of which are laid to conform to the grade and surface of the street, and which is otherwise constructed so that the public are not excluded from the street as a public highway, which runs at a moderate rate of speed compared with commercial railroads, which carries no freight, but only passengers from one part of a thickly populated district to another in a town or city and its suburbs, and for that purpose runs its cars at short intervals, stopping at street crossings or other places irregularly, as the convenience of its patrons may require, for the receipt and discharge of its passengers." In the decisions of this court above cited the duty of street railway companies to their patrons is declared to be only commensurate with that imposed by the common law on common carriers of passengers. But railroad

companies, it has been held, are absolutely liable for injuries to a passenger resulting from the operation or management of their trains, unless they can show that the gross negligence of such passenger or the violation by him of some known rule or regulation of the company was the cause of the injury. (*Union P. R. Co. v. Porter*, 38 Neb. 226; *Missouri P. R. Co. v. Baier*, 37 Neb. 235; *Chicago, B. & Q. R. Co. v. Landauer*, 39 Neb. 803; *Fremont, E. & M. V. R. Co. v. French*, 48 Neb. 638.) In other words, it has been distinctly settled by our own decisions that the liability of one is that of an insurer, while the other is only answerable for the failure to exercise the highest degree of care. The difference in the liability of the two kinds of carriers results from the fact that one is affected by the statute in question and the other is not. It follows from these considerations that the instruction requiring the defendant to prove gross negligence on the part of the plaintiff as an essential element of its defense to the action was erroneous. It is argued, however, that if this was error it was error without prejudice, because the sixth instruction defines gross negligence to be a want of ordinary care. We do not so understand it. The meaning of the instruction plainly is that if the plaintiff did not exercise reasonable and ordinary care in discovering the opening in the floor of the car and avoiding it, the jury should take that fact into account in determining whether she was guilty of gross negligence; in other words, the doctrine of the instruction is that want of ordinary care is evidence tending to prove gross negligence. For the error committed in submitting to the jury the instructions quoted the judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.