## INDIANAPOLIS TRACTION & TERMINAL COMPANY *v.* KINNEY, BY NEXT FRIEND.

[No. 21,149. Filed October 27, 1908.   Rehearing denied January 28, 1909.]

1.   APPEAL.— *Complaint.*— *Sufficiency.*— *Instructions.*— *Same Question.*—Where a demurrer to a complaint and the correctness of an instruction present the same question, the Supreme Court will determine the question but once.   p. 614.

2.  . CONSTITUTIONAL LAW.—*Employers' Liability Act.*—*Street Railroads.*—Section 8017 Burns 1908, Acts 1893, p. 294, §1—the employers' liability act—is constitutional as to railroads.   p. 615.

3.   SAME.—*Class Legislation.*—The Constitution does not forbid the making of proper classifications of subjects for legislation.   p. 615.

4.   SAME.— *Employers' Liability Act.*— *Railroads.*— Section 8017 Burns 1908, Acts 1893, p. 294, §1—the employers' liability act—is constitutional as to railroads for the reason that the dangers inherent in operating same are peculiar and not common to other forms of employment.   p. 616.

5.   SAME.—*Employers' Liability Act.*—*Railroads.*—*Operating Trains.* —*Other Hazards.*—Section 8017 Burns 1908, Acts 1893, p. 294, §1 —the employers' liability act—applies only to railway employes engaged in the actual operation of trains, and to those whose duties bring them into a situation where they are exposed to the dangers flowing from such operation.   pp. 616, 617.

6.   SAME.—*Class Legislation.*—Class legislation may be enacted, but the classifications must ·inhere in the subject-matter, and rest upon a substantial reason.   p. 616.

7.   MASTER AND SERVANT.—*Employers' Liability Act.*—*Street Railroads.*—A servant engaged as a member of a construction gang in unloading rails from a flat-car standing on a siding of the street-car tracks, cannot claim the benefits of section one of the employers' liability act (Acts 1893, p. 294, §8017 Burns 1908), since he was not exposed to any of the dangers of railroad operation.   p. 618.

8.   PLEADING.—*Complaint.*—*Master and Servant.*—*Employers' Liability Act.*—A complaint alleging that the plaintiff—a member of a street railroad construction gang—was injured "wholly and entirely" by reason of the negligence of the foreman in charge of such gang in the placing of skids and in not furnishing a suffi-

cient number of servants to handle and carry the rails which they were unloading from a flat-car, is not founded upon negligence at the common law, but upon the employers' liability act (§8017 Burns 1908, Acts 1893, p. 294, §1).  p. 621.

9.  MASTER AND SERVANT.—*Fellow Servants.—Liability for Negligence of.*—Masters are not liable at the common law for the negligence of fellow servants.  p. 622.

10.  SAME.—*Ways, Works and Machinery.*—It is the master's duty to use reasonable care to provide safe ways, works and machinery for the use of the servant, and it is the servant's correlative duty to use them in a safe and proper manner.  p. 622.

11.  SAME.—*Fellow Servants.—Foreman of Section Gang.*—The foreman of a section gang, though authorized to give orders to the servants working under him, is a fellow servant with them, except when in the performance of a master's duty.  p. 622.

From Marion Circuit Court (14,329) ; *Henry Clay Allen,* Judge.

Action by Thomas J. Kinney, by his next friend, William Kinney, against the Indianapolis Traction & Terminal Company.  From a judgment on a verdict for plaintiff for $3,500, defendant appeals.  *Reversed.*

*F. Winter* and *W. H. Latta,* for appellant.

*Elliott & Elliott* and *George W. Galvin,* for appellee.

HADLEY, J.—Appellee was an employe of appellant.  He and five others were employed to do service as common laborers in constructing and repairing tracks for the defendant, a street-railroad corporation.  He claims that his injury was caused by the negligent act of John Wilson, another employe of appellant, who was at the time foreman of said gang of laborers.  The gang was taken by Wilson to a flat-car standing on a siding, to unload some steel rails.  The plaintiff was ordered by Wilson to bring an implement from the tool-car.  In the plaintiff's absence, Wilson superintended the placing of some skids on the side of the flat-car, down which to slide the rails, and upon plaintiff's approach to the car Wilson ordered him to step up and, with the implement he had, turn the rails off the car onto the skids.  In obedience to the order plaintiff turned a rail off, and when it dropped onto the skids, one of the skids slipped off

the car, and caused the rail to drop upon and injure the plaintiff.

The complaint is in·a single paragraph, and rests on the second subdivision of §8017 Burns 1908, Acts 1893, p. 294, §1, known as the employers' liability act. It is alleged: "That while so employed on June 15, as aforesaid, this plaintiff was directed and instructed by John Wilson, foreman of the work gang, who had power and control over said plaintiff, and to whose orders and directions he was bound to conform, and did conform; * * * that said Wilson directed the construction of, and saw to the placing of, certain skids to be used in moving said rails from said car, but in such a careless and negligent manner as to make them unsafe and dangerous to use; * * * that the falling of said skids was caused wholly and entirely by the negligence and carelessness of said defendant and of said John Wilson in the erection of said skids, and by the negligence and carelessness of said defendant and John Wilson in not furnishing sufficient men to handle, control and carry the irons at the time being moved; * * * that at the time of said accident said plaintiff was obeying the orders of said Wilson, to whose orders, by reason of his employment, he was bound to conform and did conform." Knowledge on the part of the defendant and Wilson of the unsafe and dangerous condition of the skids is averred, and on the part of the plaintiff is denied.

There was no demurrer to the complaint. The answer, so far as material in this appeal, was the general denial. There was a verdict and judgment for plaintiff, and defendant's motion for a new trial having been overruled, it appeals.

1. The errors assigned call in question the sufficiency of the complaint and the overruling of the motion for a new trial.

The court instructed the jury, over defendant's objection, in substance, that if they found from the evidence that the

plaintiff was in the employ of the defendant, and under the direction of another employe of the defendant in charge of the work, and if such other employe, or superintendent, negligently constructed or placed the skids, and if plaintiff had no knowledge, or means of knowledge, of such condition, and, while performing the work he was directed to perform by said superintendent, said skids fell, by reason of said negligence, and injured the plaintiff, then they should find for the plaintiff, unless the plaintiff himself was negligent.

The complaint and instruction each presents the same question, and assumes that the employers' liability act applies to the facts stated. Is appellee correct in this assumption?

Appellant, in maintaining the negative, contends that the statute referred to, contravenes the 14th amendment to the federal Constitution, in that it denies to the appellant the equal protection of the law, in its capacity as an employer. This question received the consideration of the court in *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 69 L. R. A. 875, 71 Am. St. 300, and has been before the court in a number of cases since (*Pittsburgh, etc., R. Co.* v. *Hosea* [1899], 152 Ind. 412; *Pittsburgh, etc., R. Co.* v. *Lightheiser* [1907], 168 Ind. 438; *Bedford Quarries Co.* v. *Bough* [1907], 168 Ind. 671, 14 L. R. A. [N. S.] 418) ; but in no subsequent case has any reason been suggested to impair our confidence in the rule on this point, as laid down in *Pittsburgh, etc., R. Co.* v. *Montgomery, supra,* and, being satisfied therewith, we deem it unprofitable to repeat the reasons for such holding.

It has always been held in this State that section twenty-three of the bill of rights, in spirit and meaning, did not forbid the making of such classification of subjects for legislative purposes as are demanded by reasons of economy, convenience and the best interests of the public, and it is found that any such classification can be

made as will treat all alike and bring within its influence all who are under the same conditions. To illustrate: It would be found burdensome, wasteful, and even impracticable for our cities of the smaller class to be compelled to maintain the expensive municipal machinery found necessary to the successful government of our larger cities.

The constitutionality of the employers' liability act is upheld on the ground that the inclusion of railroads only is a proper classification, because it relates to the peculiar
4.    hazards inherent in the use and operation of railroads, and refers to the character of the employment and not to the employer. *Pittsburgh, etc., R. Co.* v. *Lightheiser, supra; Bedford Quarries Co.* v. *Bough, supra; Johnson* v. *St. Paul, etc., R. Co.* (1890), 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; *Missouri Pac. R. Co.* v. *Haley* (1881), 25 Kan. 35; *Potter* v. *Chicago, etc., R. Co.* (1877), 46 Iowa 399.

The peculiar and superlative dangers to which employes are necessarily exposed in the running of trains form the basis of such classification, and it is not, therefore,
5.    material whether the employer in railroad service is a corporation, partnership or an individual. The liability is the same. *Pittsburgh, etc., R. Co.* v. *Lightheiser, supra.*

To separate railroading from all other kinds of business is not an unconstitutional discrimination, because no other business is beset with so many and severe dangers as those encountered by employes, in preparing for, and during, the movement and operation of railroad trains. *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787. Such classification cannot be arbitrarily made. There must exist some good and natural reason for it.

We said in *Bedford Quarries Co.* v. *Bough, supra,* touching this subject: "Such legislation must not only op-
6.    erate equally upon all within the class, but the classification must furnish a reason for, and justify the

making of, the class; that is, the reason for the classification must inhere in the subject-matter, and rest upon some reason which is natural and substantial.'' See a large line of authorities collated on pages 674 and 675 of said case.

Laws are general and uniform, not because they operate on all alike, for they do not, but because everyone who is brought within the circumstances and conditions provided by the law is affected thereby.

Notwithstanding the language of the statute is ''that every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service,'' it must not for a moment be understood that the benefits of the statute are extended to all employes of a railroad corporation, or to any other class of employes than those whose duties expose them to the peculiar hazards incident to the use and operation of railroads. There is no reason, in fact or fancy, why the benefits of the statute should be extended to the office and shop employes of railroad corporations, or to others removed from the dangers of train service, and denied to the multitude of other workmen engaged in businesses of like and equal hazard.

So far as our researches have gone, no court has attempted to set up an arbitrary line of demarkation by which the application of the statute may be determined. It is apparent that no reliable test can be established by any general rule. Each case must be decided upon its own facts, the court bearing in mind that to keep within constitutional limitations the statute must be construed as designed exclusively for the benefit of those who are, in the course of their employment, exposed to the particular dangers incident to the use and operation of railroad engines and trains, and whose injuries are caused thereby. *Bedford Quarries Co.* v. *Bough, supra.* By this, we do not mean that it is essential to the bringing of an employe within the statute that he should be connected in some way with the movement

of trains, but it seems sufficient if the performance of his duties brings him into a situation where he is, without fault, exposed to the dangers and perils flowing from such operation and movement, and is by reason thereof injured by the negligence of a fellow servant described in the act. *Williams* v. *Iowa Cent. R. Co.* (1903), 121 Iowa 270, 96 N. W. 774, and cases cited; *Frandsen* v. *Chicago, etc. R. Co.* (1873), 36 Iowa 372.

To illustrate more fully by the case last cited: The plaintiff was a section hand, and belonged to a gang of five. He, with the boss and three others, started east on the hand-car with their tools. The passenger-train going west was then due, but the boss directed the men to proceed east. The train coming in sight around a curve, 250 feet distant, the boss directed an immediate stop and the removal of the car from the track. An effort was made to do so, but on seeing that they were about to be caught by the onrushing train, and when the hand-car was but partly off the track, the boss commanded the gang to flee, but the engine struck the hand-car with great force, threw it the direction the plaintiff was fleeing, and it struck and injured him. Held, that the plaintiff's employment related to the perilous business of railroading, and entitled him to the benefits of the statute.

Do the facts pleaded show the appellee to be within the protection of the statute? He was employed as a common laborer to do service with a repair and construction

7.   gang of a street-car company. When injured, he was engaged in unloading rails from a flat-car standing on a siding of the street-car tracks. His gang was not engaged in hauling iron on the car. He was not working with a train, not even with the particular car, beyond helping to discharge its load. He was in no sense a trainman. He was not injured by a moving car, nor because the car was designed to move in short trains and on fixed rails. His duties had no connection with the car, nor with the use and operation of the railroad, except to relieve the car of its

load. The skid did not slip off and fall upon the appellee because it had rested on a car. If negligently placed, it might have slipped from a standing wagon with precisely the same result.

We are unable to see how the duties of the appellee exposed him to any of the peculiar hazards of using or operating a railroad within the protection of the statute.

Iowa in 1862 (Acts 1862 [Iowa], p. 197), enacted a statute, in substance, the same as ours, and, to meet constitutional demands, it was construed by the Iowa supreme court, in a number of cases, to relate only to such employes of a railroad as were exposed, in a performance of their duties, to the dangers and hazards arising from the use and operation of railroads. *Deppe* v. *Chicago, etc., R. Co.* (1872), 36 Iowa 52.

In 1872 the statute was amended by inserting in it the following words: "When such wilful wrongs are in any manner connected with the use and operation of any railroad so owned or operated, on or about which they shall be employed" (Acts 1872 [Iowa], p. 70)—thus writing into the statute what the courts had previously read into it by construction. *Schroeder* v. *Chicago, etc., R. Co.* (1875), 41 Iowa 344.

Kansas copied the Iowa statute of 1862, and Minnesota and Indiana have adopted it in substance.

With respect to the adjudications in Iowa, it is said in *Foley* v. *Chicago, etc., R. Co.* (1884), 64 Iowa 644, 649, 21 N. W. 124: "With the exception of *Deppe* v. *Chicago, etc., R. Co.* [1872] 36 Iowa 52, all the actions in which this court has determined that railroad companies are liable in this class of cases are those where the injury was received by the movement of cars or engines upon the track." Citing seven other Iowa cases to establish the statement.

Among the many instances in which the benefits of the statute have been denied are the following: In *Malone* v. *Burlington, etc., R. Co.* (1884), 65 Iowa 417, 21 N. W. 756,

54 Am. Rep. 11, the plaintiff's duties were to wipe engines, open and close doors of the engine-house, remove snow from the turntable and connecting tracks, but he was not, by reason of such duties, employed in the operation of the railroad.

In *Luce* v. *Chicago, etc., R. Co.* (1885), 67 Iowa 75, 24 N. W. 600, the plaintiff was employed in a railroad coal-house, and was injured by the negligence of a fellow servant while loading coal upon a car. He was denied the benefit of the statute because his injuries were connected in no way with the operation of the railroad.

In *Matson* v. *Chicago, etc., R. Co.* (1885), 68 Iowa 22, 25 N. W. 911, the plaintiff was a member of a construction gang, and his duties required him at times to ride upon the train and to work on and about the cars and track. He was injured by the negligence of a coëmploye's striking his hand with a heavy stone while engaged in placing stones under the ends of the ties. It was held that the injury was not connected with the operation of the railroad.

Many other valuable illustrations may be found in *Chicago, etc., R. Co.* v. *Artery* (1890), 137 U. S. 507, 11 Sup. Ct. 129, 34 L. Ed. 747.

In *Johnson* v. *St. Paul, etc., R. Co.* (1890), 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419, the plaintiff was a bridge carpenter engaged in repairing a bridge on the defendant's railroad, and in doing the work, it was necessary to leave the draw partly open. Through the negligence of a coemploye the draw was left unfastened, was blown shut by the wind, and injured the plaintiff. Held, the company was not liable, because the employment did not embrace the peculiar hazard incident to the operation of a railroad, within the meaning of the statute.

In *Pearson* v. *Chicago, etc., R. Co.* (1891), 47 Minn. 9, 49 N. W. 302, the plaintiff was a sectionman, and while his crew was engaged in loading rails from the ground onto a flat-car, one of the crew negligently let a rail fall upon the

plaintiff's arm and injured it. Held, that the injury was not the result of any danger peculiar, or directly connected with, the use and operation of the railroad, and not within the statute.

From these considerations we are led to conclude that the employment in which the plaintiff was engaged at the time of his injury does not belong to that distinctive and peculiarly hazardous class of service necessary to the operation of railroad trains, for which special statutory protection finds constitutional sanction.

The conclusion just announced renders it unnecessary to consider whether the statute under consideration applies to street railroads; but see majority opinion of Justices Gillett, Monks and Hadley in *Kinsey* v. *Union Traction Co.* (1908), 169 Ind. 563, 601. See, also, *Funk* v. *St. Paul City R. Co.* (1895), 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. 608; *Riley* v. *Galveston City R. Co.* (1896), 13 Tex. Civ. App. 247, 35 S. W. 826; *Sams* v. *St. Louis, etc., R. Co.* (1903), 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475; *Lincoln St. R. Co.* v. *McClellan* (1898), 54 Neb. 672, 74 N. W. 1074, 69 Am. St. 736; *Board, etc.,* v. *Market St. R. Co.* (1901), 132 Cal. 677, 64 Pac. 1065; *Front St. Cable R. Co.* v. *Johnson* (1891), 2 Wash. 112, 25 Pac. 1084, 11 L. R. A. 693; *Fidelity, etc., Trust Co.* v. *Douglas* (1898), 104 Iowa 532, 73 N. W. 1039.

But it is urged that the complaint states facts sufficient to constitute a cause of action at common law. We do not think so. It is alleged that the incident occurred 8. "wholly and entirely" from the negligence of John Wilson, the foreman in charge of the work gang to which the plaintiff belonged, in placing the skids, and in not furnishing sufficient men to handle and carry the rails. With respect to the failure to furnish an adequate number of men to handle the rails, it is enough to say that there was no charge in the complaint that any particular number of men were promised, or necessary, in handling the rails.

It is a familiar rule, pertaining to the relation of master and servant, that the master shall observe reasonable care in the selection of his servants, and choose none but efficient and careful workmen, and this done, all those engaged in the same general employment are fellow servants, and must look out for each other's carelessness, and can have no recourse to the master for an injury that may happen from the negligent act of a fellow workman.

It is a further duty of the master to furnish his employes not only a safe working place, but proper and safe tools and instrumentalities to work with, and their correlative duty is to use those tools and instrumentalities in a proper and safe manner. *Bedford Quarries Co.* v. *Bough, supra; Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280; *Central R. Co.* v. *Keegan* (1895), 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; *Kraus* v. *Lehman* (1908), 170 Ind. 408.

In this instance it was the duty of the company to furnish proper and safe skids for unloading the rails, and the corresponding duty of those employed to unload them, so carefully to use and place the skids as to avoid injuring one another. *Chicago, etc., R. Co.* v. *Barker, supra; Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680.

It may be said that the following principles are as old as the common law itself: (1) The master is not liable for injuries received by an employe, through the negligence of a coemploye engaged in the same common service. (2) The boss of a gang of four or five section men, or track repairers, is, when not charged with duties of the master, the fellow servant of those working under him, and this is true even though it be shown that the boss had been expressly authorized by the master to give orders and directions to those working with him, with respect to the performance of all their duties, not in-

volving duties of the master. *Indianapolis St. R. Co.* v. *Kane* (1907), 169 Ind. 25; *Dill* v. *Marmon* (1905), 164 Ind. 507, 69 L. R. A. 163; *Southern Ind. R. Co.* v. *Martin, supra; Hodges* v. *Standard Wheel Co., supra; Northern Pac. R. Co.* v. *Peterson* (1896), 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994.

It is charged in the complaint that the accident was caused "wholly and entirely" by the negligence of the gang boss, John Wilson. This alone was sufficient to carry the case beyond the limits of the common law. There are other questions presented, arising under the motion for a new trial, which will probably not arise again, and we do not consider them.

Judgment reversed, with instructions to grant appellant a new trial.