## CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* FOLAND.

[No. 21,651. Filed April 20, 1910. Rehearing denied June 24, 1910.]

1. MASTER AND SERVANT.—*Employers' Liability Act.—Railroads.— Bridge Workers.—Complaint.*—A complaint alleging that the plaintiff was a servant of defendant railroad company engaged in the construction of bridges, that the foreman in charge of the "bridge gang" ordered him to descend into a pit and to act as pile steerer, that such foreman ordered such pile timbers sawed so that if not stayed at the top they would fall over upon plaintiff, and negligently ordered the stays to be removed, without notice to the plaintiff, by reason whereof plaintiff was struck and injured, states no cause of action under section one of the employers' liability act (Acts 1893 p. 294, §8017 Burns 1908), such act applying only to hazards of actual train service. pp. 412, 417.

2. MASTER AND SERVANT.—*Vice-Principal.—Allegations Showing.— Complaint.*—An allegation in a complaint that the defendant's foreman was delegated with "power and authority to provide the ways, works, tools, machinery and appliances with which to perform their work," is not controlling on the question as to whether such foreman was a vice-principal, where no defect was alleged in any of such matters. pp. 415, 422, 425.

3. MASTER AND SERVANT.—*Vice-Principal.—Designation of.—Superintendent.*—The designation of a person as superintendent does not of itself constitute him a vice-principal, the character of the duties conferred being the test in determining whether one is a vice-principal. pp. 416, 421.

4.  MASTER AND SERVANT.—*Vice-Principal.—How Determined.*—Any
    person entrusted with the performance of a masterial duty is a
    vice-principal as to the performance of such duty. pp. 416, 419,
    424.
5.  MASTER AND SERVANT.—*Railroad Bridge Foreman.—Negligence
    of.—Complaint.*—A complaint alleging that the foreman of a
    "bridge gang" negligently ordered the stays removed from the
    tops of piling, permitting said piling to fall, thereby injuring a
    servant who was below in an excavation steering the piling, and
    who was ignorant of such removal, states no cause of action at
    the common law, such foreman as to such work being merely a
    superior fellow servant. pp. 417, 425.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by William H. Foland against the Cleveland, Cin-
cinnati, Chicago and St. Louis Railway Company. From
a judgment on a verdict for plaintiff for $4,000, defendant
appeals. Transferred from Appellate Court under §1394
Burns 1908, subd. 2, Acts 1901 p. 565, §10. *Reversed.*

*C. E. Cowgill, L. J. Hackney, Frank L. Littleton* and
*A. B. Everhart,* for appellant.
*Bagot & Pence,* for appellee.

MYERS, J.—This was an action by appellee against ap-
pellant for alleged negligence.

The material portions of the complaint, which is in one
paragraph, are that appellee was an employe and servant
of appellant, as a laborer engaged in the work of
bridge building, and with other employes of appel-
lant was engaged in preparing the foundation for
abutments for a bridge; that plaintiff and the other em-
ployes with whom he was so engaged constituted a force of
men called a "bridge gang;" that defendant appointed
William Litton superintendent, foreman and boss over said
gang, and delegated to him authority to provide the ways,
works, tools, machinery and appliances with which to do
and perform said work and to direct the manner and means
of doing it, to order, direct and control the service and
work of each member of said gang, including this plaintiff,

and to order, direct and command each of said employes, including this plaintiff, as to what particular service he was to perform and the particular place he should occupy in performing said work, and it was the duty of each employe, including this plaintiff, and he was bound so to do, to conform to and obey each and every order of said Litton in and pertaining to all matters connected with said work and the performance thereof; that on January 3, 1905, there were at said place a great number of piles, each consisting of a heavy piece of timber about forty feet in length and from eight to twelve inches in diameter, which had previously been driven into the ground about half the length, leaving about twenty feet in length of each pile projecting above the surface of the earth; that prior to said date there had been prepared an excavation or pit in which piling was to be driven, and that said piling, which had been so previously driven, as aforesaid, had been braced and fastened together at the top by spiking a heavy board across the tops thereof and from one to another, so that they were firmly stayed, supported and held in place and kept from falling; that on said day said piles were so braced, stayed and secured that none of them could fall, and while they were in said condition said Litton ordered and directed this plaintiff to go into said pit and act as pile steerer, ordered and required other employes to operate a crane derrick, others to operate a pile-driver, others to saw off at the ground level said piles so partially driven, and then and there ordered and directed said employes in charge of said crane derrick to lash a chain and rope around the tops of said piles, one by one, and after they were so sawed off by said other employes to raise them one by one by means of said derrick and swing them in turns over said pit or excavation, and it then became the duty of this plaintiff under his said employment and the order of said Litton to seize the lower end of each pile and steer it to its proper place to be driven, and when so placed it was to be lowered

by said derrick and then driven by said employes in charge of said pile-driver; that the place where plaintiff was required to perform said duty was so located that if said piles so partially driven should fall they would fall against and upon him; that plaintiff and all said employes obeyed said Litton, and while plaintiff and said other employes were so engaged, as aforesaid, said Litton ordered, directed and required said employes, so engaged in sawing off said piles to saw all of them without waiting for the derrick men, which said men so engaged in sawing at once did, leaving only a small part of each pile unsawed, and not leaving sufficient amount to support the weight of said piles or to prevent them from falling, without the support of said stays at the top; that after said piles were so sawed, and plaintiff was so engaged in said duty at the point where he was so ordered and required to be, said Litton ordered and required others of said employes, without the knowledge or consent of plaintiff, to go above and to the tops of said piles, and with crowbars pry loose said brace and stay, which they did, all without the knowledge or consent of plaintiff and without any notice to him whatever; that as soon as said brace and stay was loose, as aforesaid, one of said pilings, of great weight, fell upon and against plaintiff while he was at the point where he was so directed and required to be, whereby his left leg was crushed and broken in such a manner that it became necessary to amputate it.

Then follows a description of his injuries and his loss and damage. It is further alleged that plaintiff received his said injury on account of and by reason of the carelessness and negligence of said Litton in ordering and requiring him to work in said place, and allowing and permitting said defect in the ways and works connected with and in use in said business of defendant, and in causing and requiring said brace to be released and removed therefrom, and causing and permitting said piling to fall, all of which was removed without notice to plaintiff; that each and all of said

acts, orders and directions, done and given by said Litton, were done and given by such foreman and superintendent for and on behalf of this defendant; that plaintiff had no notice or knowledge whatever that said brace had been so released or removed, nor of the danger occasioned thereby until said piles fell and injured him."

If the theory of this complaint is that of liability under section one of the employers' liability act (Acts 1893 p. 294, §8017 Burns 1908), no cause of action is stated, for the reason that it appears that appellee was not injured by the train operation, and the rule is settled in this State that the reason for the statute, and the basis upon which its constitutionality is grounded, is that of the hazards attending the operation of trains. *Indianapolis Traction, etc., Co.* v. *Kinney* (1909), 171 Ind. 612, and cases cited. Appellee's employment and service was in nowise different from that of an employe in the construction of a bridge by any private person or corporation, or by any public authority.

The complaint clearly cannot be sustained under the employers' liability act.

It seems to have been based and tried upon that theory, but lest we might be mistaken in that view, we are led to inquire into the sufficiency of the complaint as a 2. common-law right of action, and are at once confronted with the proposition as to whether the superintendent, foreman and boss was a vice-principal or a fellow servant. The allegation that he was delegated with "power and authority to provide the ways, works, tools, machinery and appliances with which to do and perform the work" is not controlling, for the reason that there is no defect alleged in any of these particulars. If there had been, then, as the duty of providing safe ways, works, tools, etc., is a duty owing by the master, the delegation of the power and authority to provide them would constitute the foreman a vice-principal. *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673, and cases cited; *Dill* v. *Marmon*

(1905), 164 Ind. 507, 69 L. R. A. 163; *Fort Wayne Iron, etc., Co.* v. *Parsell* (1907), 168 Ind. 223.

His designation as superintendent has in itself no necessary meaning as constituting him a vice-principal; 3. that must be determined from the character of the duties conferred upon him, and not by his rank. *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 59 L. R. A. 792, and cases cited.

Whether one is a vice-principal or a fellow servant is not always readily determinable. In 3 Elliott, Railroads §1317, it is said: "The term 'vice-principal' is generally 4. used to denote an employe to whom the employer has intrusted the performance of a duty which the law requires the employer himself to perform. We think that a superior agent or vice-principal is an employe who is entrusted generally with the performance of the master's duties, or is entrusted with the performance of some of the master's duties, although he may not be entrusted with all the duties of the employer. We believe that where the duty which the law imposes on the employer is entrusted to an employe the employe is a vice-principal as to that duty, although the matter to which it relates may not be in the strict sense a general one." This definition seems to us to be sound, and in accord with our own cases. It was said in the case of *Thacker* v. *Chicago, etc., R. Co., supra:* "A vice-principal, therefore, is one who represents the master in the discharge of those duties which the master owes to his servants. If, however, the servant whose negligence caused the injury was not at the time discharging a duty which the master owed to his servants, but simply a duty which the servant owed to the master, he was a fellow servant with others engaged in the common business, and the master would not be liable for any injury inflicted upon such fellow servants by reason of his negligence." See, also, *Dill* v. *Marmon, supra,* and cases cited.

In the case of *Justice* v. *Pennsylvania Co.* (1893), 130

Ind. 321, it was held that a section foreman with authority to hire and discharge men was a vice-principal as to that duty, but a fellow servant of those working with him. *Alaska. Mining Co.* v. *Whelan* (1897), 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390.

The negligence here charged is that of the foreman in directing the work in which, by reason of lack of care in its performance, appellee was injured—neglect of the duty the foreman owed to the master, and to his co-laborer not to injure him. To constitute a cause of action there must be a duty shown as owing by the master, and its neglect by him, or by one acting in his stead, and consequent injury. *Cleveland, etc., R. Co.* v. *Morrey* (1909), 172 Ind. 513, and cases cited. The complaint shows that appellee engaged in a general employment attended with more or less danger, under any circumstances, and no duty is alleged as owing to him by the master which is shown to have been neglected by the master. The most that is shown is that a person who is not shown to be a vice-principal, but at the most a superior fellow servant, by the manner of directing the work caused the injury to appellee. We see no escape from the proposition that the complaint is not good as a common-law right of action.

For the insufficiency of the complaint the judgment is reversed, with instruction to the court below to sustain the demurrer to the complaint and for further proceedings not inconsistent with this opinion.

## ON PETITION FOR REHEARING.

MYERS, J.—The court should have referred in its original opinion to the case of *Indianapolis St. R. Co.* v. *Kane* (1907), 169 Ind. 25, as the case was familiar to the writer and to the court, but the question of non-liability under the employers' liability act was not raised in that

case, either upon the record or the briefs, and the majority of the court was of the opinion that, owing to that fact, it would be understood by the profession; but, upon further consideration, it was decided to withdraw the opinion and refer to that case, in order that the seeming conflict between that case and the case of *Indianapolis Traction, etc., Co.* v. *Kinney* (1909), 171 Ind. 612, and this case might be explained; for the case of *Indianapolis St. R. Co.* v. *Kane, supra,* is in seeming conflict with this case and the case of *Indianapolis Traction, etc., Co.* v. *Kinney, supra,* and was so understood by the writer and the court at the time.

We have again examined the complaint upon the lines urged by appellee in its support, and especially the cases relied on: *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 6 L. R. A. 584, 16 Am. St. 372, *Nall* v. *Louisville, etc., R. Co.* (1891), 129 Ind. 260, and *Knickerbocker Ice Co.* v. *Gray* (1908), 171 Ind. 395.

We are clearly of the opinion that the theory of the complaint was of liability under the employers' liability act, and that appellee's original brief fairly so indicates, by citation of §8017 Burns 1908, Acts 1893 p. 294, §1, and cases under that act, under points and authorities as to the sufficiency of the complaint, though there is nowhere else in the record any express declaration of the theory of the complaint, and we might have been justified in reversing the judgment upon that ground. But, in view of the state of the decisions when the cause was tried, appellee ought not to be restricted as in case of a settled condition of the decisions, and for that reason we again review the complaint, upon appellee's theory now urged, of stating a common-law liability.

It is due to appellee to say that the cases cited by his counsel upon this application have not been followed in their application to the doctrine of vice-principal, and have been distinguished in effect in a number of cases.

The case of *Taylor* v. *Evansville, etc., R. Co., supra,* was undoubtedly correct in its holding that the master mechanic was in a general way a vice-principal, but as to the particular act which caused the injury to Taylor, he was a fellow servant. Taylor was injured by the negligent act of the master mechanic in assisting in the removal of the equalizer, and was clearly a coemploye within the rule cited by the learned justice who wrote that opinion. He says: "If Torrence [the master mechanic] was acting in the capacity of a coemploye at the time his negligence caused the appellant's injury, the action can not be maintained, although he was the appellant's superior, and had the right to retain or discharge him. An agent of high rank may be, at the time the act is done, a fellow servant of an employe occupying a subordinate position. *Hussey* v. *Coger* [1889], 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. 787. If, for instance, the general superintendent should take hold of one end of an iron rail to assist an employe of the company in loading it on a car he would be, as to that single act, a fellow employe, although as to other acts he might be the representative of the master." The error in the application of the rule is plain, for it is stated that "while the appellant was engaged in the work of removing the key of the equalizer, under the master mechanic's direction, the equalizer was negligently pulled out of its place *by the master mechanic* [our italics] and it fell upon the appellant and very severely injured him." The work they were doing was disconnecting an equalizer and removing it from its place, in order to enable the master mechanic to examine it, for the purpose of ascertaining whether the key could be changed. That the application of the rule was inadvertently made in that case fully appears from the statement of the rule and the facts.

In 3 Elliott, Railroads (2d ed.) §1323, it is said: "This rule does not rest upon the doctrine of subordination, but upon the

principle that it is the master's duty to provide safe machinery and appliances, and in performing that duty the master mechanic occupies the master's place." This rule is well established. But when the master mechanic has discharged the duty of the master, of ordinary care in furnishing a safe place or safe appliances, and descends from that obligation and duty to assist in the manual act, he is a fellow servant. The rule is well stated in another case written by Judge Elliott (*Krueger* v. *Louisville, etc., R. Co.* [1887], 111 Ind. 51), where he says, quoting from the case of *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181, also written by him: "The negligence of a fellow servant, or co-employe, *acting as such,* will not authorize a recovery in any case, although the fellow servant or coemploye may be a superior officer, an agent or a foreman; but, if the superior agent is charged with the performance of the master's duty, *then, in so far as that duty is concerned,* his acts and his negligence are the acts and the negligence of the master, and not simply those of a coemploye or fellow servant." (Our italics.)

The distinction is well stated in the case of *Ford* v. *Fitchburg R. Co.* (1872), 110 Mass. 240, 14 Am. Rep. 598, where it is said: "The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow servants of those who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, *even when the same person renders service by turns in each,* as the convenience of the employer may require." (Our italics.) And this is true in jurisdictions where superior agents, such as section foremen, are recognized as vice-principals, a rule which has never obtained in this State. *Gann* v. *Nashville, etc., R. Co.* (1898), 101 Tenn. 380, 47 S. W. 493, 70 Am. St. 687.

The case of *Nall* v. *Louisville, etc., R. Co., supra,* is more

nearly in point as respects the allegations of the complaint before us, than any other case cited or that we have been able to find. There is, however, one marked divergence between these two cases. In that case, the decedent was a track, or section hand, taken out of his usual employment to do an extraordinary and hazardous work. Helms, in charge of the work, is designated in the complaint as "agent and chief foreman of the defendant," "defendant's agent in chief," "he alone directing and commanding how such work should be done, and who should do it." It was there said that "styling him in the complaint as 'agent,' or 'chief,' or 'representative of defendant,' casts no light upon the matter. The law imposes certain duties. * * * The agent to whom he entrusts such duty, regardless of his rank, acts as the master, and in his place." The case is grounded upon the case of *Taylor* v. *Evansville, etc., R. Co.,* *supra*, without noting the distinction and inadvertence of the application of the rule as we understand it in that case. The case of *Nall* v. *Louisville, etc., R. Co.,* *supra*, was correctly decided upon other grounds, which are stated on petition for rehearing, because it shows an unusual condition with which the railway company was suddenly confronted, requiring immediate action, and requiring not only the furnishing of safe appliances, but an intelligent directing authority, in order to accomplish a specific thing not contemplated by the employment of the servant; and also because the servant was put in a place in itself dangerous, and of continuing danger, and it was properly held that this directing head was necessarily the master.

The case at bar is essentially different in several particulars. Appellee was engaged in the usual line of an employment in which he was experienced. The place where he was directed to work is not alleged to have been dangerous or hazardous, it only became so by the manner in which the common employment was carried on. It is not alleged that

there was any defect in the appliances or machinery, or any danger in the place where the work was carried on. When the master has used ordinary care in selecting the appliances, and continues this duty, and the work is not in a dangerous place, or is not rendered dangerous by some reason other than the negligent manner in which it is carried on, the master's duty is discharged. If this were not true, the master would become an insurer of safety. Characterizing the superior as "superintendent, foreman and boss," adds nothing to his relation; the allegations simply show him to be a superior in a common employment. It is alleged that defendant delegated to the "superintendent, foreman and boss" "power and authority to provide ways, works, tools, machinery and appliances with which to do and perform the work." It is not alleged that there was any neglect in providing them. It is alleged that defendant gave and delegated to him "power and authority" to direct the manner of doing the work and what each employe should do, and said employes were bound to conform to his orders. That is no more than the power which every superior servant has. It is not alleged that the place where he was directed to work was dangerous, so there is no duty shown to have been neglected in that respect, unless it can be said that the place must be kept safe under all conditions, and the negligence charged is not in rendering the place unsafe, by reason of anything in or about the place, but by reason of a condition arising and created, outside of the place, in the progress of the work, by the order to remove braces, causing a piling to fall, which could, or was as likely to fall in any other direction as in the direction of appellee. In other words, if appellee had been in some other place where he had a right to be, and had been injured by the falling piece, he would, upon the theory of this complaint, so far as a common-law action is concerned, have had as good a right of action as he here claims. We only call attention to this fact to show that it is not because he was in

a particular place, but because of the alleged negligence in removing the stay—that is, the manner in which, under a common law employment, a constantly changing general work was carried on—that he was injured.

In the case of *Knickerbocker Ice Co.* v. *Gray, supra,* the complaint charged both defective machinery and an unsafe place, with direction from one, who was charged with the duty of the master to furnish safe machinery and a safe place to work, for Gray to leave his usual place of employment and go into the unsafe place, where he was injured from the unsafe condition there existing. The question of the authority of the engineer to direct Gray, arose upon the evidence, and it was shown that the engineer was charged with the duty of hiring and discharging men, and to look after the engines, machinery and engine-rooms, which necessarily implied the duty of keeping them safe—a master's duty.

In the case of *Ohio, etc., R. Co.* v. *Stein* (1894), 140 Ind. 61, it was held that the duty of a foreman of machine shops to see that the appliances sent out were ordinarily safe was the master's duty, and in the case of *Indiana, etc., R. Co.* v. *Snyder* (1895), 140 Ind. 647, it was held that a carpenter charged with the duty of making and placing hand-car handles is a vice-principal as to that service, because that is a master's duty, and it is manifest that that line of cases does not control the question here. Here we have negligence charged, not in the machinery or appliances, but in giving an order by one in general charge of the work, and the question turns upon the relation of the master to the foreman, and his relation to appellee. Suppose the foreman had pried off the brace? Could it then be insisted that he was not a fellow servant in doing the general work? Can it be any more the case when he directs another to do it? In other words, does the fact of the giving of the order raise him to a higher relation than doing it manually? It was said in the case of *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82,

85, 59 L. R. A. 792: "In this State there is a clear distinction between a superior servant and a vice-principal. A superior servant is generally one who has authority to direct and control other servants, and may or may not be charged with any of the duties which the master owes his servants."

In the case of *Dill* v. *Marmon* (1905), 164 Ind. 507, 515, 69 L. R. A. 163, it was said: "Notwithstanding the view which this court has sanctioned as to the liability of the master to a servant for the negligence of an employe who is over the whole service, or over a large department of it, yet it has never given any recognition to what is termed the 'superior servant doctrine.' On the contrary, it has always maintained that the master was not liable for the act of a mere foreman in giving directions concerning the work to a servant working under him, where the place and appliances furnished by the master were proper. * * * In the case last cited [*Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460,] it was pointed out that the master's duty relative to furnishing a safe place to work does not require, in undertakings which may properly be entrusted to a foreman and the men under him, that the master shall guard the men against those transient dangers which from time to time occur in the progress of the work. In *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280, it was said: * * * 'The whole matter was one of detail that the foreman and the men might properly be permitted to attend to in their own way.'"

The employer however is not liable to his employe for the negligence of his coservants in respect to the details of the work, nor is he bound to protect his employe against the mere transitory perils that the execution of the work occasions. "The word 'place' in negligence cases usually means the premises where the work is to be done, and does not comprehend the negligent acts of fellow servants by reason of which the place is rendered unsafe or dangerous. * * * The absolute obligation resting upon

a master to use due care to provide and maintain a safe place for his workmen does not extend to all the passing risks that may arise from short-lived causes." *Haskell & Barker Car Co.* v. *Przezdziankowski* (1908), 170 Ind. 1, 14 L. R. A. (N. S.) 972, 127 Am. St. 352.

It must be manifest that in order that there should be a liability under the complaint in this case, it must appear that the foreman was acting in place of the master, discharging a master's duty, with respect to the alleged negligent order, and it is likewise manifest that the foreman was not discharging any duty owing by the master. It is not shown what, if any, authority the foreman had, except that of controlling and directing the manner of doing the work, and to hold that the complaint states a cause of action would be to hold that every superior servant in directing the manner of doing a specific work, in the line of a general employment, is a vice-principal, and creates a liability merely from his power of control and direction of the work, and his negligence in doing so, and the very object and purpose of the employers' liability act, owing to the hazards of train operation, was to create that relationship under specified conditions, by way of enlargement of the common law liabilities. A superior servant cannot be said to be a vice-principal in giving a negligent order in the progress of a changing work any more than it can be said that a master is liable where a qualified servant chooses a negligent manner of doing a specific work assigned to him. Either case would make the master an insurer. Broad allegations of power and authority to direct the work and control the men cannot control the specific allegations showing that the injury was occasioned by a negligent direction, under the changing conditions under which the work was carried on, by one who was not discharging the duties of the master, but those of a superior servant, in giving the direction.

Two cases in which the proposition is tersely stated are

found in *Flynn* v.*City of Salem* (1883), 134 Mass. 351, and
*Floyd* v. *Sugden* (1883), 134 Mass. 563. See, also, *O'Neil*
v. *Great Northern R. Co.* (1900), 80 Minn. 27, 82 N. W.
1086, 51 L. R. A. 532; *Tedford* v. *Los Angeles Electric Co.*
(1901), 134 Cal. 76, 66 Pac. 76, 54 L. R. A. 85, and *Illinois
Cent. R. Co.* v. *Josey's Admx.* (1901), 110 Ky. 342, 61 S.
W. 703, 96 Am. St. 455, 54 L. R. A. 78 and the valuable and
extensive notes.

The petition for rehearing is overruled.