# RICHEY v. CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 7,428.   Filed February 15, 1911.]

1. APPEAL.—*Briefs.—References to Transcript.*—A brief which under the "Statement of the Record" fails to set out the page and line of the transcript on which the questioned paragraph of complaint is found, properly presents the alleged error, where under "Errors Relied on for Reversal," the page and line of the transcript are pointed out.   p. 129.

2. APPEAL.—*Briefs.—Errors.*—Where only one error is relied upon for reversal, the court will assume that all authorities cited in appellant's brief, under the heading "Points and Authorities," refer to such error.   p. 129.

3. MASTER AND SERVANT.—*Railroads.—Employers' Liability Act.—Complaint.*—A complaint alleging that the plaintiff was a servant of defendant railroad company, that defendant's section foreman ordered him to load the shovels, picks and other tools upon the hand car and to get upon such car and go to another point and make certain repairs, that plaintiff obeyed, that such foreman so negligently operated such car as to throw the plaintiff therefrom, to his great injury, states a cause of action (if such subdivision is valid) under subdivision two of section one of the employers' liability act (Acts 1893 p. 294, §8029 Burns 1908), providing that "every railroad * * * corporation * * * shall be liable * * * for personal injuries, * * * where such injuries resulted from the negligence of any person in the

service * * * to whose order * * * the injured employe * * * was bound to conform, and did conform." pp. 130, 133.

4. MASTER AND SERVANT.—*Employers' Liability Act.—Complaint.— Essentials.*—To state a cause of action against a railroad company under subdivision two of section one of the employers' liability act (Acts 1893 p. 294, §8029 Burns 1908) the complaint must show (1) that the plaintiff was a servant of such company, (2) that the person giving the order was a servant of such company and that the plaintiff was bound to comply and did comply with the order, (3) that the order was special, and (4) that the order was negligently given, or that, in properly performing it, the plaintiff was injured by some negligent act or omission of the servant giving the order. p. 130.

5. MASTER AND SERVANT.—*Employers' Liability Act.—Liability.— Special Orders.—What are.*—Under subdivision two of section one of the employers' liability act (Acts 1893 p. 294, §8029 Burns 1908), providing that railroad companies shall be liable where injuries to employes are received because of the negligence of any other servant to whose order the plaintiff was bound to conform and did conform, the plaintiff can recover only where the order was a specific or special one; and an order for a section hand to load the tools upon a hand car and go with the section foreman to a certain place to do other work, is a special order. p. 131.

6. MASTER AND SERVANT.—*Section Foreman.—Negligence.—Common Law.*—A complaint against a railroad company alleging that the section foreman so negligently managed the brake of the hand car on which the section hands were riding that the plaintiff was thrown therefrom, does not state a cause of action at the common law. p. 133.

7. CONSTITUTIONAL LAW.— *Fourteenth Amendment.— Railroads.— Employers' Liability Act.*—Subdivision two of section one of the employers' liability act (Acts 1893 p. 294, §8029 Burns 1908), providing that every railroad company shall be liable where injuries to an employe were caused by the negligence of another employe, to whose order the injured one was bound to conform and did conform, does not violate the Fourteenth Amendment to the federal Constitution. p. 136.

8. CONSTITUTIONAL LAW.—*Federal Decisions.—Binding Effect.—* The decisions of the federal Supreme Court, in relation to the federal Constitution, are binding upon the state courts. p. 139.

9. CONSTITUTIONAL LAW.—*Federal Decisions.—State Statutes.—* Decisions of the federal Supreme Court as to whether state statutes violate the federal Constitution are binding upon the state courts. pp. 139, 140.

10. APPEAL.—*Constitutional Questions.—Transfers.*—The Appellate Court has no jurisdiction to determine constitutional questions;

and where an appeal containing such a question is transferred to such court, it will be presumed that such question has been settled by the Supreme Court. pp. 139, 140.

11. APPEAL.—*Transfer.*—Where the Appellate Court deems a ruling precedent erroneous, the appeal should be transferred to the Supreme Court, with a proper recommendation. p. 141.

From Bartholomew Circuit Court; *Marshall Hacker,* Judge.

Action by Walter C. Richey against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, plaintiff appeals. *Transferred to Supreme Court.* (For final decision, see 176 Ind. ———.)

*Hord & Adams,* for appellant.
*Carter & Morrison,* for appellee.

LAIRY, P. J.—Appellant filed a complaint in the court below in two paragraphs. He afterwards dismissed the first paragraph, and a demurrer for want of facts sufficient to constitute a cause of action was sustained to the second paragraph. Appellant refused to amend or plead further and judgment was rendered against him. From this judgment, he appeals to this court, and assigns as error the ruling of the trial court in sustaining the demurrer to the second paragraph of his complaint.

This paragraph of complaint is as follows: "The plaintiff, Walter C. Richey, for a second and further paragraph of amended complaint, and by way of further amended cause of action against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, a corporation, says: That defendant is now and has been continuously for more than ten years last past a corporation owning and operating a line of steam railroad and engaged in the business of a common carrier of passengers and freight, which line of railroad passes through the county of Shelby and State of Indiana; that on March 27, 1905, plaintiff was an employe in the service of defendant, doing common labor as a section hand in repairing and maintaining the railroad tracks of de-

fendant, and doing other varied service on said section, which was and is about three miles long, extending from the town of Waldron, in said county, in a northwesterly direction to what is known as Wheeler creek, over which defendant maintained a bridge called Wheeler bridge, which was known as the west end of said section, and is located west of the village of Prescott upon defendant's line of railroad, which section, with the hand-cars, tools, implements and the employes, was under the control and supervision, and subject to the orders, of an employe of said defendant known as a section foreman, and at said time this plaintiff and other section hands, laboring for defendant, were under the control and subject to the orders of said section foreman, and were engaged in the same common service and in the same department of service of said defendant under the orders of said section foreman, who at said time was a co-employe and fellow servant with this plaintiff and the other employes on said section; that said section foreman during all of said time, in performing the service of said corporation, was then and there acting, and duly authorized so to do, in the place of and performing the duties of said corporation in that behalf as its duly authorized agent; that upon said day, and for a long time previous thereto, this plaintiff was under the absolute control and subject to the orders and direction of said section foreman in performing his work and labor upon said section; that upon said day and for a long time previous thereto, defendant owned a machine commonly called and known as a hand-car, which was then, and for a long time before said time had been, in the possession and under the exclusive control of said section foreman, and which was used by defendant under the supervision and control of said section foreman for said defendant, for the purpose of transporting said section foreman and said section hands under his control and subject to his order along the line of said section for the purpose of performing the duties of said corporation,

and also for the purpose of carrying and transporting tools, implements, lifting jacks, cross-ties, railroad iron, spikes, dirt, iron rails, gravel and other material used in repairing and maintaining the roadbed of said corporation and for performing other duties pertaining thereto. Said hand-car was a large and heavy machine, with iron wheels that were propelled by an appliance attached thereto that was operated by hand, and propelled by employes of said company with handlebars; that said machine and car was also equipped with a brake for checking and stopping the speed of said car; that upon said day plaintiff, with other section men, who were employes of said defendant, were unloading cross-ties and cars of defendant at the town of Waldron, on said section, when said section foreman gave this plaintiff and the other employes working on said section a specific and special order to desist from said work and load upon said hand-car their shovels, picks, lifting jacks, and other tools belonging to defendant, and specifically ordered and directed this plaintiff and said employes working upon said section (which order and direction he was authorized to give), to get upon said hand-car and proceed with him thereon to the west end of said section at said Wheeler creek bridge, to make repairs upon said roadbed of said defendant by surfacing it; that while traveling and proceeding under said order and direction of said section foreman who had charge of and management of the brakes and of said car, by virtue of the authority vested in him by the defendant, and while traveling upon said hand-car, subject to said orders of said section foreman, to perform the duties required of them, said hand-car, while running at a high rate of speed, to wit, at the rate of twelve miles an hour, over defendant's road, and while said car was being propelled as aforesaid by this plaintiff and said employes, under the order and direction of said section foreman who was then present upon said car ordering and directing its movement, and who was the only person authorized to operate the brakes on said hand-

car, and who was the only person who had any authority to control and direct the movements and operations of said car, which was then heavily loaded with implements, tools and said section foreman and other employes on said section, and while so running said hand-car at a high rate of speed on a down grade, said section foreman carelessly, negligently and with great force, without any notice to this plaintiff and the other employes of said car, suddenly applied the brakes to said car when there was no necessity therefor, at a point more than one mile from their destination, whereby said car was quickly, suddenly and violently checked, and reduced from a speed of twelve miles an hour to a speed of three miles an hour, by said section foreman's negligently and carelessly jumping upon and throwing his entire weight upon said brakes, he, said section foreman, then and there being a large and heavy man, and by reason of which negligent conduct this plaintiff was thrown off said car to the ground upon said railway bed, his body coming in violent contact with the ground, his head striking one of the iron rails of said track, and the car passing over his left leg, foot and ankle, crushing the bones of the leg, foot and ankle, and lacerated and tore the tendons, ligaments, muscles and blood vessels of said leg, foot and ankle, and by reason of said injuries, and negligence of said section foreman and this defendant, he was cut, bruised, wounded and injured about the head, back, arms, and other parts of his body, so that he is permanently injured, and will be a cripple for life; that at the time aforesaid, when he was so injured, he was obeying and conforming to the special and direct orders and directions of said section foreman, who then and there had competent authority in said behalf from said defendant to order and direct him, and said section foreman, at said time, was his superior in authority upon said section, and said section foreman, this plaintiff and the other employes upon said section at said time were engaged in the same common service in said department of defendant as

fellow servants, performing the duties and labors of said corporation. This plaintiff further avers that at the time he received said injuries, and at the time of the negligent acts of said section foreman and defendant, he, the plaintiff, was an employe in the service of said defendant, and at the time of receiving said injury and during the negligent conduct of said section foreman and at all of said times, plaintiff exercised due care and diligence to prevent said injury, and during all of said time he was free from fault or negligence contributing in any degree to his injury; that previous to said time he was physically strong and able to perform any kind of labor, and to earn $36 a month, but since said time he has not been able to perform common labor, and will not be able again to do so; that he has suffered great pain and anguish, and will continue to suffer greatly from said injuries as long as he shall live; that he has incurred a liability for and has paid for medicine, nursing, physicians' services, and attention to be healed, the sum of $100. Wherefore, he says that he is damaged in the sum of $10,000, for which he demands judgment and for all other proper relief.''

The point is made by appellee that the brief of appellant raises no question for decision by reason of the fact that it does not comply in two particulars with rule twenty-two of this court. It is true that appellant does not refer to the page and lines of the transcript where the second paragraph of complaint may be found at the place in his brief where the complaint is set out under the heading entitled ''Statement of the Record;'' but immediately preceding this heading, and on the same page of the brief, under the head of ''Errors Relied on for Reversal,'' it is stated that the court erred in sustaining the demurrer to the second paragraph of complaint, beginning on page nine, at line one. The other objection to the brief is that it does not, under the head of ''Points and Authorities,'' contain a separate heading of each error relied upon.

As there is but one error relied on for reversal in this case, the court will understand that all authorities cited refer to this error. There is a substantial compliance with the rule in the preparation of the brief.

This complaint is drawn under subdivision two of section one of the employers' liability act (Acts 1893 p. 294, §8017 Burns 1908.) There are some unnecessary averments

3.  in the complaint, which render its theory somewhat doubtful, but from an examination of the whole complaint, our judgment is that it proceeds upon the theory that there is a liability under subdivision two of this act. This subdivision, in connection with the former part of the section, is as follows: "That every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Second. Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform, and did conform."

In order to state a cause of action under this subdivision of the statute, it is necessary that the complaint should state facts which show, (1) that the plaintiff was em-

4.  ployed by a corporation engaged in the operation of railroads; (2) that the person giving the order or direction was employed by such railroad company, and that the person injured was bound to comply with such order, and did so comply; (3) that the order was a special order, not as broad as the general scope of the employment; (4) either that the order given was a negligent order, or, in the event said order was not negligently given, that while plaintiff was performing his duty in carrying out said order, and while he was in a place where he was required to be in the performance of his duty under said order, he was injured

through some negligent act or omission of the person giving the order or direction.

The first position taken by appellee is that the foreman was not negligent in giving the order set out in the complaint. It is not necessary that the order should have been a negligent one, provided it appears that the person injured was obeying the order, and while so engaged in the performance of his duty thereunder he was injured by the negligent act or omission of the person giving it. *Indianapolis Gas Co.* v. *Shumack* (1899), 23 Ind. App. 87; *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558.

The order given by the section foreman, as alleged in the complaint, was that plaintiff should stop unloading ties at Waldron, load the tools on a hand-car, and proceed with his foreman and the other section men, upon said hand-car, to Wheeler creek, a point about three miles distant, for the purpose of surfacing the track. It is claimed by appellee that this was not a special order or direction within the meaning of the statute, and that therefore the company would not be liable for the negligence of the section foreman, resulting in injury to plaintiff, while he was so engaged in the performance of the duties imposed by said order.

The statute does not make the company liable for all acts of negligence by a foreman whose duty it is to give orders. If a person working under such foreman is injured through the negligent acts or omissions of said foreman he cannot recover, unless it appears that at the time he was so injured he was engaged in some special work, which he had been ordered or directed by the foreman to perform. If he is engaged in the general duties of his employment, and not acting under any special orders from a foreman, he cannot recover for injuries caused by the negligence of the foreman. *Indianapolis St. R. Co.* v. *Kane* (1907), 169 Ind. 25; *Grand Rapids, etc., R. Co.* v. *Pettit* (1901), 27 Ind. App. 120; *Snowden* v. *Baynes* (1890), 24 Q. B. D. 568.

The question then arises, Was the order given to plaintiff to quit unloading ties at Waldron, to load the tools on the hand-car, to get upon said car with the foreman and the other section men, and proceed to a point about three miles distant, for the purpose of surfacing the track, such special order as gave to plaintiff a right of recovery against his employer for injuries caused through the negligence of the section foreman, while he was on said car and on his way to Wheeler creek?

A proposition very similar to this was presented and decided by the Supreme Court of this State, in the case of *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 59 L. R. A. 792. In that case it was alleged that McGill, section foreman, ordered an extra gang of men, including appellant, to go on hand-cars over appellee's track to meet a gravel-train for the purpose of unloading gravel from the cars of said train; that appellant, in obedience to the orders of said McGill, in company with eight others of said extra gang, got on one hand-car, and McGill and the others of said extra gang got on another hand-car, and started to meet said gravel-train; that appellant was bound to conform and did conform to said order of McGill, section foreman, in going on said hand-car to meet said gravel-train. It was further alleged that, while plaintiff was so riding on said hand-car, in obedience to said order, the section foreman negligently gave a signal to the person in charge of the brake, directing him to stop the hand-car suddenly, without any warning to plaintiff, and that by reason of the sudden stopping of said hand-car plaintiff was thrown from the car and injured. This complaint was held sufficient to state a cause of action under subdivision two heretofore quoted. This conclusion could not have been reached by the court in any other way than by holding that the order given by McGill, the section foreman, to plaintiff, to get on the car and go over the track of appellee to meet a gravel-train, was a special order, and that while plaintiff was so engaged, the company was liable

for any injuries inflicted upon him through the negligent act or omission of the section foreman. This case seems to us to be decisive upon this question, and we therefore hold that plaintiff at the time he was proceeding on said hand-car, as alleged in the complaint, from Waldron to Wheeler·creek, was in the execution of a special order given him by the section foreman, to whose orders he was bound to conform, and to which he was conforming at the time he received his injury.

The other averments of the complaint are sufficient to show negligence of the section foreman in the operation of said hand-car, which resulted in the injury to plaintiff complained of.

It is averred in the complaint that the section foreman was in charge of the brakes of said hand-car, and that he was the only person who had authority in the management, control and operation of the car, and the only one who had authority to stop said car or set said brakes; that, while they were a considerable distance from the place of their destination, said section foreman, without any warning to plaintiff, suddenly threw his whole weight on the brake, and thereby reduced the speed of the car almost instantly from twelve miles an hour to three miles an hour, and that by reason of the reduction of the speed, without any warning to plaintiff, he was thrown from the car to the track, and the car passed over him, inflicting the injuries complained of.

This complaint does not state a cause of action at common law. We are called upon to decide whether it states a cause of action under section one of the employers' liability act. From what we have said, it will be seen that we are of opinion that it does state a cause of action under subdivision two of such statute, in case that statute can be held to apply to that branch of railway service in which appellant was employed at the time he received the injury of which he complains. It plainly appears from the averments of the

complaint that appellant was employed as a section hand; that he was not engaged in the train service of his employer, and that his injury did not result from a danger incident to the operation of trains on the railroad operated by appellee, unless we hold that a hand-car is a train, within the meaning of the decisions of the Supreme Court, to which we will later refer. This we cannot do, as the dangers incident to the operation of a hand-car are in noway similar to the dangers incident to the operation of trains of freight- or passenger-cars drawn by locomotive engines. As we view the complaint, it is good, provided the statute under consideration is held to apply to an employe of a railroad company, engaged as a section hand, who is injured in the operation of a hand-car, without coming in contact with any train; but, if the statute does not apply in such a case, the complaint is clearly insufficient, and the trial court committed no error in sustaining the demurrer. In passing upon the sufficiency of this complaint, it is therefore necessary for this court to place a construction on this statute. The statute by its terms provides, "that every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by *any employe while in its service* * * * in the following cases." The words used in the statute would seem to make it applicable to every employe while in the service of the corporation, regardless of the branch of service in which he is employed or the character of his employment. The Supreme Court of this State has recently held, however, that to give the statute a construction as broad as its words indicate, would render the act violative of the fourteenth amendment to the federal Constitution, in that it would deny to railroad corporations the equal protection of the law, in its capacity of an employer of labor. It being the duty of the court so to construe this statute as to hold it constitutional, if possible, it was held that the statute should be construed as designed exclusively for the benefit of those employes who

are, in the course of their employment, exposed to the particular dangers incident to the use and operation of railroad trains and engines, and whose injuries are caused thereby. *Indianapolis Traction, etc., Co.* v. *Kinney* (1909), 171 Ind. 612, 23 L. R. A. (N. S.) 711.

In the case of *Indianapolis St. R. Co.* v. *Kane, supra,* a judgment against appellant was sustained. The judgment was founded on a complaint based upon the second subdivision of the statute under consideration, and it appeared from the averments of the complaint that appellee, at the time he was injured, was engaged in repairing a bridge, and that his injury resulted from the negligence of the road foreman, and was not caused by any hazard incident to the use or operation of a train. The complaint in that case was held sufficient, and the case was not overruled or even referred to in the later case of *Indianapolis Traction, etc., Co.* v. *Kinney, supra.*

The same question was again before the Supreme Court in the case of *Cleveland, etc., R. Co.* v. *Foland* (1910), 174 Ind. 411. In that case the court followed the case of *Indianapolis Traction, etc., Co.* v. *Kinney, supra,* but did not overrule or refer to the case of *Indianapolis St. R. Co.* v. *Kane, supra.* In the opinion, rendered on petition for rehearing (*Cleveland, etc., R. Co.* v. *Foland, supra*), it is stated that the question of nonliability under the employers' liability act was not raised in the case of *Indianapolis St. R. Co.* v. *Kane, supra,* either upon the record or in the briefs. The opinion of the court in the case last referred to does not show that this question was not raised, and there is nothing in the opinion to indicate that the question was not passed upon. The complaint was held sufficient, and the decision is not put upon the ground that the question of nonliability under the employers' liability act was not raised. This can be learned only from an examination of the opinion rendered on rehearing in the case of *Cleveland, etc., R. Co.* v. *Foland, supra.*

Since the decisions of our Supreme Court before referred to were announced, the Supreme Court of the United States has decided that a construction of the statute under

7.  consideration, which allows its benefits to all employes in the service of a railroad corporation, does not offend against the equal protection clause of the 14th amendment to the federal Constitution. In the case of *Louisville, etc., R. Co.* v. *Melton* (1909), 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921, the question was directly presented. The appellee, a carpenter, was injured while employed in the construction of a coal tipple at Howell, Indiana, through the negligence of his foreman. He brought his action in the State of Kentucky, and pleaded the Indiana statute now under consideration. He obtained judgment, and the case was affirmed by the court of appeals of the State of Kentucky, and the case finally reached the Supreme Court of the United States, where it was again affirmed. The court, in its opinion, at page 680, says: "It is beyond doubt foreclosed that the Indiana statute does not offend against the equal protection clause of the 14th amendment, because it subjects railroad employes to a different rule as to the doctrine of fellow servant, from that which prevails as to other employments in that State. *Tullis* v. *Lake Erie, etc., R. Co.* [1899], 175 U. S. 348, 44 L. Ed. 192; 20 Sup. Ct. 136; *Pittsburgh, etc., R. Co.* v. *Ross* [1908], 212 U. S. 560, 53 L. Ed. 652, 29 Sup. Ct. 688. But while conceding this, the argument is that classification of railroad employes for the purpose of the doctrine of fellow servant can only, consistently with equality and uniformity, embrace such employes when exposed to dangers peculiarly resulting from the operation of a railroad, thus affording ground for distinguishing them for the purpose of classification from coemployes not subject to like hazards or employes engaged in other occupations. The argument is thus stated: 'Plaintiff in error does not question the right of the legislature of Indiana to classify

railroads in order to impose liability upon them for injuries to their employes incident to railroad hazards, but it does insist that, to make this a constitutional exercise of legislative power, the liability of railroads must be made to depend upon the character of the employment, and not upon the character of the employer.' Thus stated, the argument tends to confuse the question for decision, since there is no contention that the statute as construed bases any classification upon some supposed distinction in the person of the employer. The idea evidently intended to be expressed by the argument is, that although, speaking in a general sense, it be true that the hazards arising from the operation of railroads are such that a classification of railroad employes is justified, yet, in operating railroads, some employes are subject to risks peculiar to such operation, and others to risks which, however serious they may be, are not, in the proper sense, risks arising from the fact that the employes are engaged in railroad work, the legislative authority in classifying may not confound the two by considering in a generic sense the nature and character of the work performed by railroad employes collectively considered, but must consider and separately provide for the distinctions occasioned by the varying nature and character of the duties which railroad operatives may be called upon to discharge. In other words, reduced to its ultimate analysis, the contention comes to this: That by the operation of the equal protection clause of the 14th amendment, the states are prohibited from exerting their legitimate police powers upon grounds of the generic distinction obtaining between persons and things, however apparent such distinction may be; but, on the contrary, must legislate upon the basis of a minute consideration of the distinctions which may arise from accidental circumstances as to the persons and things coming within the general class provided for. When the proposition is thus accurately fixed, it necessarily results that in effect it denies

the existence of the power to classify, and hence must rest upon the assumption that the equal protection clause of the 14th amendment has a scope and effect upon the lawful authority of the states contrary to the doctrine maintained by this court without deviation. This follows, since the necessary consequence of the argument is to virtually challenge the legislative power to classify, and the numerous decisions upholding that authority. To this destructive end it is apparent the argument must come, since it assumes that however completely a classification may be justified by general considerations, such classification may not be made if inequalities be detected as to some persons embraced within the general class by a critical analysis of the relation of the persons or things otherwise embraced within the general class. A brief reference to some of the cases dealing with the power of a state to classify will make the error of the contention apparent." And again at page 682 the court said: "While, as we have previously said, it is true there are state decisions dealing with statutes classifying railroad employes sustaining the restricted power to classify which is here insisted upon, we do not think it is necessary to review them or to notice those tending to the contrary. They are referred to in the opinions rendered in the court below. Nor do we think our duty in this respect is enlarged because, since the judgment below was rendered, the court of last resort in Indiana (*Indianapolis Traction, etc., Co.* v. *Kinney* [1909], 171 Ind. 612, 23 L. R. A. (N. S.) 711, and *Cleveland, etc., R. Co.* v. *Foland,* [1910], 174 Ind. 411) has, upon the theory that it was necessary to save the statute in question from being declared repugnant to the equality clause of the state Constitution and the 14th amendment, unequivocally held that the statute must be construed as restricted to employes engaged in train service."

The decisions of the Supreme Court of the United States upon questions involving the construction of the federal

Constitution have been held to be binding upon the courts of the several states. *State* v. *Cudahy Packing Co.* (1905), 33 Mont. 179, 82 Pac. 833, 114 Am. St. 804; *Ballard* v. *Wiltshire* (1867), 28 Ind. 341; *Larabee* v. *Talbott* (1847), 5 Gill (Md.) 426, 46 Am. Dec. 637.

The decisions of the federal court are also binding upon a state court, where the question involved is whether or not a statute of the state violates a provision of the federal Constitution. It must necessarily follow that such a decision is binding upon the courts of this State, upon the question of whether or not it is necessary, in order to save the statute under consideration from offending against the 14th amendment of the federal Constitution so to construe it as to exclude from its benefits all employes of railroad corporations except those whose occupation exposes them to dangers incident to the use and operation of trains, and whose injuries result therefrom. *State* v. *Cudahy Packing Co., supra; State* v. *Hernando Ins. Co.* (1896), 97 Tenn. 85, 36 S. W. 721.

We have said this much for the purpose of showing the unsettled state of the law upon this question. This case was transferred to this court from the Supreme Court. This court has no jurisdiction to pass upon constitutional questions, that power being vested by statute in the Supreme Court. The transfer was probably made in pursuance of the doctrine announced by the Supreme Court, to the effect that where a constitutional question has been repeatedly decided by the Supreme Court, it is regarded as settled, and no longer open for decision, and that in such case, even though the constitutional question is raised, it cannot be regarded as presented for decision, and the jurisdiction is in this court. *Pittsburgh, etc., R. Co.* v. *Rogers* (1907), 168 Ind. 483; *Pittsburgh, etc., R. Co.* v. *Peck* (1909), 172 Ind. 19.

Where a case is so transferred, we presume that this court is expected either to ignore the constitutional question or to

follow the decision of the Supreme Court upon that question. We cannot in this case ignore the question, unless we shut our eyes to the averments of the complaint, which clearly show that appellant was not so employed as to expose him to the dangers incident to the operation of trains, and that his injury did not result therefrom. The question of the sufficiency of the complaint is directly presented to this court for decision, and, while the particular defect under consideration is not pointed out in the brief of appellee, the defect is so apparent that it cannot be overlooked. We have the decisions of the Supreme Court before referred to in mind, and, even though they are not cited by appellee in its brief, we cannot ignore them in passing upon the sufficiency of the complaint.

We recognize the binding force of the decision of the Supreme Court of the United States upon the question under consideration, and our judgment is in accord with the reasons advanced by that court in its opinion from which we have quoted. Those reasons apply with equal force when the statute under consideration is considered with reference to article 1, §23, of our state Constitution. This court has no jurisdiction to decide a constitutional question; neither has it any power to overrule or disregard a decision of the Supreme Court of this State. We cannot ignore the constitutional question presented in this case, and we cannot conscientiously follow and give our assent to the holdings of our Supreme Court upon this question in the decisions to which we have heretofore referred. In view of what we have said, we cannot regard the law as so firmly settled in this State as to preclude all further controversy upon the subject. We regard it as important that the Supreme Court of this State should pass upon this question again at its earliest opportunity, considering it in the light of the recent decision of the federal Supreme Court herein cited, to the end that lawyers and

litigants may be relieved of all uncertainty as to the law upon this subject.

We therefore respectfully request that the Supreme Court of this State take over this case and decide it, and that the cases of *Indianapolis Traction, etc., Co.* v. *Kinney,* 11. *supra,* and *Cleveland, etc., R. Co.* v. *Foland, supra,* be overruled, and that the case of *Indianapolis St. R. Co.* v. *Kane, supra,* be followed, and the rule of law therein announced established.

We think that this case demonstrates the necessity that the Supreme Court should take and retain jurisdiction of all cases in which a constitutional question is involved and presented, whether said question has been previously decided by that court or not. This was suggested by Montgomery, C. J., in his concurring opinion in the case of *Pittsburgh, etc., R. Co.* v. *Peck* (1909), 172 Ind. 562, 578. We therefore further request that the case of *Pittsburgh,· etc., R. Co.* v. *Rogers* (1907), 168 Ind. 483, and the later cases decided upon the authority of that case be overruled.

This case is transferred to the Supreme Court, under the provisions of §1429 Burns 1908, Acts 1893 p. 29, §3.