In the Matter of the Application of certain Freeholders of the town of Irondequoit for an order requiring the Commissioners of Highways of the towns of Irondequoit and Penfield to build, rebuild or repair the float-bridge, so called.

The act of 1857 (chap. 639, Laws of 1857) providing for the building and repairing of bridges over streams dividing adjoining towns, confers no authority as to bridges over bays, lakes or other bodies of water not "streams," or as to causeways or bridges over marshes between two towns.

The towns of I. and P. were divided by a stream running south, over which was a bridge; the town of P. lying east, and the town of I. west of the stream. West of the bridge was a marsh, about forty rods wide, which, in times of highwater, was flooded by the waters of I. bay, over which marsh was a causeway of logs, and then another stream with a bridge; the causeway and bridges were known as the "float-bridge." In proceedings, under said act, to compel the commissioners of the two towns to rebuild the bridge known as "the float-bridge," the court held the whole of the three structures to be the bridge between the two towns, and ordered it to be supported and maintained at their joint expense. *Held*, error; that if the structure was, as claimed by the applicants, across the head of the bay, no authority was given by said statute to rebuild the bridge over it; that the court could only make an order in reference to a bridge over the stream dividing the towns; and that the causeway was part of the highway to be maintained by the town in which it was located.

Also *held*, that the order was a final order affecting a substantial right in a special proceeding, and so reviewable here. (Code, § 11, sub. 3.)

An order was first granted directing the commissioners to build, rebuild and repair "the float-bridge," and directing a reference to ascertain the facts, with a view to determine "the length and limits of said bridge, as contemplated by statute." Upon the report of the referee the order appealed from was granted. *Held*, that the first order was an intermediate one which was brought up for review on appeal from the final order; and that both orders should be reversed.

(Argued January 20, 1877; decided February 6, 1877.)

Appeal, by the commissioners of highways of the town of Penfield, Monroe county, from order of the General Term

of the Supreme Court in the fourth judicial department affirming an order of Special Term in proceedings instituted under chapter 639, Laws of 1857.

The facts sufficiently appear in the opinion.

*J. H. Martindale* for the appellant. The Special Term had no authority or jurisdiction to make the order appealed from. (*In re Pet. Freeholders*, 59 N. Y., 316.)

*J. A. Stull* for the respondent. Whether the exact point of the town line was in the center of the bridge or not was of no consequence. (Laws of 1841, chap. 225 ; Laws of 1857, chap. 383; § 1; *Lapham* v. *Rice*, 55 N. Y., 472.)

EARL, J. It is provided by the act, chapter 639 of the Laws of 1857, that whenever any adjoining towns shall be liable to make or maintain any bridge over any stream dividing such towns, it shall be lawful for three freeholders in either of such towns, by a petition in writing, to apply to the commissioners of highways in each of such towns to build, rebuild, or repair such bridge ; and if such commissioners shall refuse, such freeholders may apply to the Supreme Court at a special term thereof for an order requiring such commissioners to build, rebuild or repair such bridge ; and such court may upon such application in doubtful cases refer the matter to some disinterested person to ascertain the requisite facts in relation thereto, and to report the evidence thereof to the court; and that upon the coming in of such report in case of such reference, or upon or after the hearing of the motion, in case no such reference shall be ordered, the court shall make such order thereon as the justice of the case shall require; and in case an order shall be made, and funds shall be needed by the commissioners to carry it into effect, that the court shall specify the amount of money required, and how much thereof shall be raised in each town.

Under this act in July, 1872, three freeholders of the town of Irondequoit, in the county of Monroe, applied by petition

to the commissioners of highways of said town, and also of the town of Penfield, to repair or rebuild the highway bridge uniting the two towns known as the float-bridge. The commissioners having refused to comply with the petition, the freeholders, upon affidavit of the facts and notice of motion served upon the commissioners, applied to the Supreme Court at Special Term for an order requiring the commissioners to build, rebuild or repair the bridge. The court, after hearing the parties interested, made an order that the commissioners of highways of the two towns forthwith proceed to build, rebuild or repair the bridge, and in the same order appointed a referee to take and report to the court the facts and circumstances connected with the bridge " with a view to determine what proportion of the expense each town shall bear, and also the length and limits of said bridge as contemplated by statute." The line between the two towns is described as running down the center of Irondequoit creek to Irondequoit bay, and thence along the center of the bay to Lake Ontario. Upon the hearing before the referee there was controversy as to where the line was at the place where the bridge was built. On the Penfield side, near the hard land, there was a stream running south called by the applicants the east channel, and by the other party the Irondequoit creek. Over this there was a bridge, a little over four rods wide, built in the ordinary form of bridges over such streams with a free passageway for water underneath. Westerly of this bridge, for about forty rods, there was a marsh filled with flags. Through this marsh there was no stream of running water, except in the case of floods when the water coming down from above would have some flow. Ordinarily there was no perceptible flow of the water. Sometimes there was but little, if any, water therein and sometimes considerable depth of water depending upon the hight of water in the bay and lake. On the west side of this marsh, and near the hard land on the Irondequoit side, there was what was called the west channel which was a stream of water about four rods wide, and over this there was built a bridge in the same manner as the bridge over the east-

erly stream.  Over this marsh, many years ago, there was built a causeway as follows: Timbers were laid down upon the ground in the mud crosswise of the road, and then upon these, timbers were laid lengthwise and then crosswise again, and so on until the structure was high enough to be above highwater, and then upon the top it was planked so as to make it nearly uniform on the top with the bridges.  This structure rested upon the ground.  It did not float, and there was no free passageway under it or through it for water. Instead of being made of timber it could have been made of earth.  The two bridges and this causeway between the dry land on each side made a distance of over fifty-six rods. Upon the coming in of the report of the referee the court held this whole distance to be the bridge between the two towns and ordered it to be supported and maintained at the joint and equal expense of the two towns, and from this order this appeal was taken.

The claim of the appellants, as I understand it, is that the place where this bridge and causeway (called the float-bridge) are built is across the head of Irondequoit bay and that Irondequoit creek empties into the bay at some distance south of the bridge.  If this claim be well founded I can perceive no authority for this proceeding under the statute.  That confers authority upon the court only in reference to bridges over "streams" dividing towns.  It confers no authority as to bridges over bays or lakes or other bodies of water.  If the claim be well founded, then this was not a stream of the width of fifty-six rods; and for the same reason the statute gives no authority as to causeways or bridges over marshes between two towns.  The authority to order the construction and maintenance of bridges would probably carry with it the authority to construct the necessary and ordinary approaches on either side to get on to the bridge, but no more.  Such approaches might be regarded as part of the bridge.  The causeway was not ordered to be supported and maintained in this case as part of the bridge over Irondequoit creek, but as part of the bridge over the head of the bay.

But upon a clear preponderance of the evidence I am satisfied that the stream called the east channel is Irondequoit creek and that it empties into the bay north of and below the bridge. The record of this highway, as laid out in the two towns and the acts of public officers and of the inhabitants of the two towns, show that this stream is the dividing line between the two towns. Hence, the court could only make an order in reference to the bridge over this stream. The causeway was part of the highway to be maintained by the town in which it was located.

It follows that the order appealed from is erroneous; but the respondents claim that there is no authority for this appeal. The Code (§ 11, sub. 13) provides for an appeal in a final order affecting a substantial right made in a special proceeding. This is ample authority for this appeal, and such an appeal was sustained in 59 New York, 316.

In the first order the court ordered the commissioners to build, rebuild or repair the float-bridge, and also ordered the reference. While this order is not specially appealed from, and if the float-bridge meant only the bridge over the Irondequoit creek would not be objectionable, it is an intermediate order and may be construed to have reference to the whole of the structure fifty-six rods in length and was, probably, so intended. It must, therefore, be reversed as an intermediate order with the final order from which the appeal was taken.

This order should be reversed, without costs to either party as against the other in this court.

All concur; except CHURCH, Ch. J., not voting.

Orders reversed.