## AUTHORITY OF COUNTY COMMISSIONERS TO BUILD A HIGH LEVEL VIADUCT WITHIN A MUNICIPALITY.

### Circuit Court of Cuyahoga County.

STATE OF OHIO, EX REL WILLIAM HOWELL, A TAX-PAYER, v. W. F. EIRICK ET AL, COMMISSIONERS OF CUYAHOGA COUNTY, AND JOHN J. FITZGERALD, ET AL, AS THE BOARD OF DEPUTY STATE SUPERVISORS.*

### Decided, February 27, 1911.

*Bridges and Viaducts—Authority of County Commissioners to Build, where Located Wholly within a Municipality—Persistence of a County Road, Notwithstanding Travel Deserts it for Other Routes —Bridges Sites—Sections 2421 and 7557.*

1. The authority vested in county commissioners by Section 7557, General Code, to build bridges in certain cases, includes authority to construct a viaduct or high level bridge in a proper case.

2. The fact that a part of a county road was for a time under the exclusive jurisdiction of a plank road company, and has since been *de facto* under the exclusive jurisdiction of the municipality within which it is now embraced, does not in law amount to an abandonment of the road, but its existence persists and the county commissioners have authority to construct and maintain bridges thereon.

3. The question of a site for a bridge is made by the statutes incidental to the main question of authority to erect the bridge, and where its erection has been authorized the county commissioners have the authority to appropriate whatever property may be necessary for the site.

4. Where the termini of a proposed high level bridge or viaduct are located substantially within the limits of a county road, the fact that it follows a straight line, instead of the circuitous route made necessary by the descent to the bottom of the valley as the road was originally surveyed, is a matter of no importance so far as authority to construct the bridge is concerned.

*William Howell* and *Burton & Dake,* for plaintiff.
*Walter D. Meals* and *John A. Cline,* contra.

*Affirmed without opinion, *State, ex rel,* v. *Eirick,* 84 Ohio State, 503.

HENRY, J.; MARVIN, J., and WINCH, J., concur.

Appeal by plaintiff.

This action, commenced in the common pleas and appealed to this court, is a tax-payer's action to enjoin the building by the county commissioners of Cuyahoga county of "a county high level bridge over the Cuyahoga river upon the Cleveland-Milan road between Detroit and Superior avenues in the city of Cleveland; said Cleveland-Milan road being a state road," according to the language of the preliminary resolution adopted by the county commissioners July 13. 1910.

Pending the action the question of building such a bridge has been submitted to and approved by the electors of said county, as involving an expense far in excess of the statutory limitation of $18,000, and hence requiring such approval by the electors.

The amended and supplemental petition alleges "that the Cuyahoga river valley at the point referred to in said resolution is about one-half mile in width, occupied by numerous streets of the city of Cleveland, railroad tracks, and buildings, and that on either side of said valley the banks rise to a height of from 75 to 100 feet to the general level of the land on either side of said valley; that the Cuyahoga river occupies a channel in said valley about 200 feet in width," and that said high level bridge is "to extend the entire distance across said river valley, and to be carried on arches or trestle work, so as to connect the level land at the top of the banks on either side of said valley, and to span the railroad tracks, public streets of the city of Cleveland, buildings, said river channel, and all intervening space between the banks of said valley, so as to connect Detroit avenue on the westerly bank of said valley, with Superior avenue on the easterly bank, and form a practically level elevated roadway across said entire valley."

The petition further alleges "that there is not at the place of said proposed structure any state or county road, free turnpike, improved road, abandoned turnpike, or plank road, and no such road in common use at or near the place of said proposed structure." The petition also alleges, "That there is at the place aforesaid a viaduct spanning said river valley connecting Detroit and Superior avenues in the city of Cleveland and forming an

elevated and level roadway about 50 or 60 feet in width and about one-half mile in length, which viaduct was built and erected by the city of Cleveland about the year 1874, at great expense,'' etc.

The petition contains other allegations tending to show that the proposed high level bridge will so interfere with said existing viaduct as to constitute an unlawful invasion by the county commissioners of the exclusive jurisdiction of the city over the present route of travel; that the original county road in and as a part of which said high level bridge is proposed to be erected, has long since ceased to extend, if indeed it ever did extend, across the Cuyahoga river; that the existing viaduct affords a convenient route of travel, which has long been the exclusive route across said Cuyahoga river valley and that the high level bridge proposed to be erected departs not only from the existing, but also and more widely from the ancient route of travel, in such wise as to touch said route or routes only at the termini of the proposed improvement, and there only approximately. Relator denies that the improvement is a bridge, properly so called; denies that it is necessary, and denies that its location is on any county road of which the county commissioners have jurisdiction, or which is in common public use; all of which the answer puts in issue.

The county commissioners derive their authority, if any, in the premises, from General Code, Sections 2421 and 7557, as follows:

''Section 2421. The commissioners shall construct and keep in repair necessary bridges over streams and public canals on state and county roads, free turnpikes, improved roads, abandoned turnpikes and plank roads in common public use, except only such bridges as are wholly in cities and villages having by law the right to demand, and do demand and receive part of the bridge fund levied upon property therein. If they do not demand and receive a portion of the bridge tax, the commissioners shall construct and keep in repair all bridges in such cities and villages. The granting of the demand, made by any city or village for its portion of the bridge tax, shall be optional with the board of commissioners.''

"Section 7557. The county commissioners shall cause to be constructed and kept in repair, as provided by law, all necessary bridges in villages and cities not having the right to demand and receive a portion of the bridge fund levied upon property within such corporations, on all state and county roads, free turnpikes, improved roads, transferred and abandoned turnpikes and plank roads, which are of general and public utility, running into or through such village or city."

The evidence, including the agreed statement of facts, shows that the Cleveland and Milan road was laid out in 1827, "beginning at the east end of Superior lane at the center thereof, in Cleveland, and running—south 72 degrees west 14 chains 65 links to a post on the west bank of Cuyahoga river, bearing south 41 degrees east of the south corner of Alonzo Carter's red house, and occupied by Joseph Mason, distant 90 links; thence south 57 degrees, west 1 chain 16 links; south 20 degrees west 13 chains 00 links; south 33 degrees 15 minutes W. 15 chains 50 links to the top of Cuyahoga Hill," and so on to Milan in Huron county. The map which is put in evidence to show the locations of the road thus laid out, of the existing viaduct, and of the proposed high level bridge, discloses that the termini of the proposed improvement are substantially within the limits of the original highway, but that the new structure, as a whole, will span the valley in an air line, and stand to the route of the ancient highway in the relation, roughly speaking, of the cord to the curve of an arc. The existing viaduct runs at a somewhat lower level between the two.

Paragraphs 3 and 4 of the agreed statements of facts are as follows:

(3)  "That Superior avenue is a public street of the city of Cleveland, with the westerly terminus at the east line of Water street in said city, and connects at said point with Superior lane, being the point of beginning of the Cleveland and Milan road, as set forth in the report above referred to."

(4)  "That the Cleveland and Milan road above referred to, from Pearl street westerly to Rocky river, followed the line of what is now called Detroit avenue. That about 1848, the Rockport Plank Road Company was chartered under Ohio Laws (46

Ohio Laws, 152). Said corporation duly organized and took possession of and constructed a plank road over said Detroit street from Pearl street as far west as Rocky river, a distance of 5 or 6 miles; and said Plank Road Company erected and maintained toll gates thereon, and in 1869, the said limits of the city of Cleveland having been extended so as to embrace so much of said road as lies between Pearl street and Gordon avenue, the said Plank Road Company, by agreement with the city of Cleveland, and in consideration of $900 paid by said city of Cleveland, executed and delivered to said city of Cleveland a conveyance of that portion of its road between Bordon avenue and Pearl street; a copy of said deed is hereto attached as Exhibit A.''

The first contention of the relator is that the proposed structure is not a bridge within the meaning of the sections above quoted, but is, in contradistinction thereto, a viaduct. It is pointed out that the Legislature has itself recognized this distinction in Section 10 of the municipal code, where the language ''construct or repair viaducts, bridges and culverts'' is used. To the same point the case of *Board of Commissioners of Carroll County* v. *Bailey*, 122 Ind., 46, is cited, the syllabus of which is as follows:

''A structure, or culvert, over a ravine, made by filling in the depression with earth and gravel, there being in the center under the highway an archway of stone masonry covered by a parapet, which was erected for the purpose merely of draining surface water off the public highway, is not a bridge within the meaning of the statute, which requires the board of commissioners of each county to cause all the bridges therein to be kept in repair.

''The term 'bridge,' in its common-law meaning, the sense employed by the statute, denotes a structure erected over a river, creek, pond, lake, or stream of water flowing in a channel, between banks more or less defined, although such channel may be occasionally dry, in order to facilitate public passage over the same.''

In the opinion of the court, at page 49, it is pointed out, however, that the Legislature of Indiana had in terms ''restricted the authority of the county commissioners to the erection and repair of bridges over streams or water courses,'' and that no such stream or water-course existed in that case.

In *Matter of Freeholders of Irondequoit*, 68 New York, 376,' which is also cited, the first paragraph of the syllabus discloses a similar basis of distinction, as follows:

"The act of 1857 (Chap. 639, Laws of 1857) providing for the building and repairing of bridges over streams dividing adjoining towns, confers no authority as to bridges over bays, lakes or other bodies of water not 'streams,' or as to causeways or bridges over marshes between two towns."

There are, indeed, some authorities which seem somewhat to limit the broad meaning of the term bridge, but our own Legislature has often used the word in the widest sense, notably in acts providing for overhead bridges across the Mahoning river, considered in *State, ex rel, v. Davis*, 55 Ohio State, 15, though these acts were there held to be unconstitutional because they were special legislation. So, also, our Supreme Court has expressly declined to narrow the significance of the term, in *Smith Bridge Co. v. Bowman*, 41 Ohio State, 37, holding that a railroad bridge is within the meaning of the word as used in the mechanic's lien statute. The dissenting opinion in that case is based upon an attempt to narrow the construction of the term. The word, as defined in 1 Bouvier's Law Dictionary, 265, is as follows:

"A bridge is a structure erected over a river, creek, stream, ditch, ravine or other place to facilitate the passage thereof, including by the term both arches and abutments."

That the term "bridge" includes viaduct is expressly held in *City of Argentine v. Atchison, T. & S. F. Railway Co.*, 55 Kansas, 730; *State v. Inhabitants of Gorham*, 37 Maine, 461; *Whitelaw v. Freeholder of Gloucester County*, 40 New Jersey Law, 302; *Funk v. St. Paul City Railroad Co.*, 61 Minn., 435.

In *State, ex rel, v. Commissioners*, 49 Ohio State, 301, it was sought to mandamus the county commissioners of Hamilton county to erect a structure similar to the one proposed in the case at bar, under the authority of Section 4938, Revised Statutes, now General Code, Section 7557, above quoted, and though the court declined to interfere with the administrative discretion of the county commissioners, it is nowhere suggested in the

opinion that the commissioners were without authority, under this section, should they choose to avail themselves of it, to build the structure in question. We have, therefore, no doubt that the sections of the General Code above cited authorize the construction of a high level bridge or viaduct in proper cases.

The relator contends secondly, that the power of the commissioners does not extend to building bridges within the limits of a city upon which general power has been conferred for that purpose. But it is expressly held in *Lewis et al* v. *Laylin et al*, 46 Ohio State, 663, that county commissioners have authority to improve a state, county or township road, although the improvement embraces that part of the highway which lies within the limits of a municipal corporation. It is moreover distinctly intimated in *City of Piqua* v. *Geist, a Minor*, 59 Ohio State, 163, that the same rule applies to the erection of county bridges within the limits of municipalities.

Whatever ambiguity may have existed in the sections of the Revised Statutes, corresponding to the sections of the General Code, above quoted, is here immaterial, because the proceedings looking to the improvement now proposed have been taken since the present codification of the statutes came into force. It may be true that the exception embraced in General Code, Section 2421, namely "except only such bridges as are wholly in cities and villages having by law the right to demand and do demand and receive part of the bridge fund levied upon property therein," is deprived of its force because of the circumstance that the only laws providing for such division of funds are apparently special laws and therefore unconstitutional; yet the fact remains that the same section now expressly provides that, "if they do not demand and receive a portion of the bridge tax, the commissioners shall construct and keep in repair all bridges in such cities and villages," which are otherwise within their jurisdiction.

The relator further contends that, if the proposed structure is properly a bridge and the commissioners have authority to build in cities, "they can not build in the location decided upon, because there is no state road or other road in common public use on which to build it, and it is not necessary."

The diversion of the route of travel over the lines of the original highway to the present viaduct has not operated a discontinuance of the county road as such. Any disused portion of the highway, if utterly abandoned, is no doubt vacated by operation of law; but the county road, as such, persists, despite the new route of travel (*Steubenville* v. *King*, 23 Ohio State, 610; *Silverthorne et al* v. *Parsons et al*, 60 Ohio State, 331). It continues, in the language of the statutes, to be a road "in common public use," or "of general public utility." Nor do we think the extinguishment of the county road is implied by the interest or action of the Rockport Plank Road Company either before or when it gave its deed to the city of Cleveland September 4, 1869, and did thereby "absolutely dispose of, release and abandon to the said city for the purpose of a public street all of that part of the plank road of said company which lies within the limits of said city and all the right and title of the said company therein and thereunto."

In *Plank Road Co.* v. *King*, 2 Ohio State, 419, it was held that:

"The interest of the public in such roads consisting of a perpetual *easement* in the land covered by them, for all actual uses and purposes of public travel, may, at the discretion of the General Assembly, be transferred without any pecuniary equivalent, to a plank road company; such plank road still remaining a public highway, and subject to the same uses and purposes as before."

Although this part of the Cleveland and Milan road was for a time under the exclusive jurisdiction of a plank road company, and although it has since been *de facto* under the exclusive jurisdiction of the city of Cleveland, the county road, within the meaning of the statutes here relied upon, continues to exist.

As to the necessity of the new bridge, we can not, as a matter of law say that the existing viaduct, which was deemed adequate at the time of its construction in 1874, and which still continues to be the main route of public travel upon this road, is now, after the lapse of more than a third of a century, adequate and convenient to the use of the vastly increased population in the midst of which it is located. That question lies wholly within the dis-

cretion of the county commissioners, so long as that discretion is. not abused. *State, ex rel,* v. *Commissioners,* 49 Ohio State, 301.

It is further contended that "'The proposed structure, as located by the commissioners, is not on the Cleveland and Milan road, and no authority has been voted to expend the public funds for a site for a bridge there.'' Whatever may have been the meaning of Revised Statutes, 2825, that section was superseded, prior to the commencement of the proceedings of the commissioners for the proposed improvement, by General Code, Section 5628, which imposes no limitation upon the county commissioners in respect to levying a tax for a bridge site. The section does make specific mention of sites for county buildings, but in connection with the buildings of county bridges, the subject of sites is ignored. The county commissioners have ample power, under the statutes, to appropriate whatever property may be necessary for the purpose in question, and to expend money in that behalf, without a vote of the electors, except as such authority may be required and given by the vote upon the question of erecting the bridge itself, and the question of site is left by the Legislature incident to the main question of erecting the bridge.

As already indicated, the agreed facts in this case show that the termini of the proposed improvement are located substantially within the limits of the Cleveland and Milan road. That the roadway, as elevated above the valley by the proposed improvement, is not in a vertical line above the old roadway, is of no importance. The obvious and proper way to erect a high level bridge across a valley is to erect it in a straight line. This necessarily involves a departure from the circuitous roadway required for the descent to the bottom of the valley as the highway was originally surveyed. The same condition obtained with regard to the Rocky river bridge. *Silverthorne et al* v. *Parsons et al,* 60 Ohio State, 331.

We have examined all the points made by the plaintiff in argument and in his brief without finding any sufficient reason to enjoin the proposed improvement as being beyond the authority of the county commissioners to make, or as involving any such irregularity of procedure as to render the expenditure of money therefor illegal.

Our Brother Winch has refrained from participating in our deliberations, and the other members of the court have independently reached the conclusions thus indicated.  He is a resident and property owner in a part of the city which will receive a material advantage from the proposed improvement, and he wishes it to be understood that his personal opinion has in nowise contributed to the conclusions reached.

The petition will be dismissed.