AMY L. WILSON, APPELLEE, v. OMAHA & COUNCIL BLUFFS
STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 15, 1916.   No. 18588.

1. Carriers: INJURY TO PASSENGER: NEGLIGENCE: SUFFICIENCY OF EVI-
DENCE. The evidence examined, its substance set out in the opinion,
and *held* sufficient to justify the submission to the jury of the
charge of negligence on the part of the motorman in stopping the
car in an unusually sudden and abrupt manner, and sufficient to
sustain the verdict of the jury thereon.

2. Instructions 6 and 7 requested by defendant examined, and *held*
properly refused.

3. Trial: INSTRUCTIONS: STATEMENT OF ISSUES: HARMLESS ERROR. In
an action for personal injuries, where the trial court intends to
submit but one of several acts of negligence charged, it is improper
practice to include in the statement of the issues to the jury a
recital of the other allegations of negligence pleaded; but, where
such statement is followed by an instruction which clearly and
explicitly eliminates from the case everything but the allegation
of negligence to be submitted, and limits the jury to a consideration
of that charge alone, the improper recital in the statement of the
issues will, ordinarily, be held to be error without prejudice.

4. Appeal: REVIEW. Where the giving or refusing of an instruction
is not excepted to at the time, nor called to the attention of the
trial court in the motion for a new trial, it cannot be assigned as
error on appeal.

5. Damages: SUFFICIENCY OF EVIDENCE. The evidence examined and
set out in the opinion *held* sufficient to sustain the amount found
by the jury as the measure of plaintiff's damages.

APPEAL from the district court for Douglas county:
CHARLES LESLIE, JUDGE, *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*W. W. Bulman* and *Sutton, McKenzie, Cox & Harris,*
contra.

FAWCETT, J.

From a judgment of the district court for Douglas county, awarding plaintiff damages for personal injuries, defendant appeals.

The facts, briefly stated, are: Plaintiff was a passenger upon defendant's electric street car. She desired to leave the car at Sixteenth street and Capitol avenue. When the car came to a stop at that point a number of passengers alighted. Plaintiff had left her seat and was walking toward the exit a little in the rear of the other passengers who were alighting. When she was within some three or four feet of the exit door, the conductor, who was standing upon the back platform facing the rear and collecting fares from passengers who were boarding the car, signaled the motorman to go ahead. The car at once started forward, whereupon plaintiff said to the conductor: "Let me off, please." The conductor evidently heard her request, and, turning about, saw that she desired to "get off." He thereupon gave the signal of one bell to stop the car. Plaintiff alleges that "the motorman in charge of said car caused the same to be brought to an unusually sudden, violent, instant and abrupt stop; that so abruptly and suddenly was the movement of said car stopped that the plaintiff was thrown to the floor of said car with great force and violence, receiving and sustaining the injuries complained of." The petition also charged negligence on the part of the conductor in starting the car before plaintiff had time to alight, but the trial court withdrew that issue from the jury, and submitted only the allegation of negligence on the part of the motorman.

Defendant presents and discusses five assignments of error which we will consider in their order.

1. It is argued that, instead of giving instruction No. 3, the court should have directed the jury to return a verdict for defendant, for the reason that the evidence was insufficient to sustain the charge of negligence submitted by that instruction. Instruction No. 3 reads as follows:

"There is no evidence in this case sufficient to justify or authorize you to find that the conductor of the car on which plaintiff was riding, at or prior to the happening of the accident to her, was guilty of doing or failing to do any act or thing that would constitute negligence on his part. The only actionable negligence alleged in the petition of plaintiff which you are to consider is the allegation that 'the motorman in charge of said car caused the same to be brought to an unusually sudden, violent, instant and abrupt stop; that so abruptly and suddenly was the movement of said car stopped that the plaintiff was thrown to the floor of' said car with great force and violence, receiving and sustaining the injuries complained of.' You are further instructed that you would not have the right in this case to declare or determine that the defendant was guilty of negligence in any other respect."

The testimony of the witnesses as to the manner in which the car stopped is conflicting. The motorman and conductor and two or three gentlemen who were standing upon the rear platform all testified that there was nothing unusual in the manner in which the car came to a stop. The testimony of plaintiff tends strongly to show that the stopping was unusually sudden. She testified that it caused a "violent rocking sensation;" that it rocked first toward the south and then toward the north; that the rocking was a "violent motion throwing me forward and backward;" that it first threw her south and then north; that when she went back the last time it threw her down violently and suddenly; that she did not have time to reach any of the handrails; that she had braced herself with her feet, but did not know the car was going to stop that way; that she was thrown about four feet back from where she was standing. The plaintiff is not corroborated by the testimony of any witness, but it is argued by her counsel that the doctrine of *res ipsa loquitur* applies; that the manner in which she was thrown to the floor furnishes corroboration of her testimony. When we consider, in addition to this, that the motorman and con-

ductor were men accustomed to the lurching of cars, and that the other witnesses were men who were standing upon the rear platform, leaning against the side of the rear vestibule, the jury may well have believed that they were not as competent to testify as to the actual manner of the stopping as plaintiff. However that may be, they have found this important issue, which was properly submitted to them by the trial court, in favor of the plaintiff, and we cannot say that her testimony, when compared with the testimony of the witnesses against her, is so unreasonable as to warrant us in setting aside the verdict on the ground that the evidence is insufficient to show negligence on the part of the defendant. Numerous authorities from other states, notably Massachusetts, are cited by defendant, which, if followed by us, would, under the facts shown, relieve the defendant from the charge of negligence in stopping the car as was done. Those cases go to the extent of holding that it is not enough to show that there was a sudden jerk of the car, but it must affirmatively appear that the jerk was extraordinary or attributable to a defect in the track, an imperfection in the car or apparatus, or to a dangerous rate of speed, or to unskilful handling. This court has never gone so far as that. On the contrary, as stated in *Lincoln Street R. Co. v. McClellan,* 54 Neb. 672:

"It is settled by the decisions of this court that street railway companies are common carriers of passengers. (Citing cases). As such they are bound to exercise for the safety of their patrons more than ordinary care. They are required to exercise the utmost skill, diligence, and foresight consistent with the business in which they are engaged, and are liable for the slightest negligence. This is the liability imposed by the common law on all carriers of passengers for hire. (Citing cases). The law presumes that one injured while being transported by a common carrier was injured in consequence of the latter's negligence; and to escape liability it must show that it has discharged the full measure of its legal duty and was in nowise to blame for the accident."

The least that can be said is that, if the defendant's car stopped in the manner described by plaintiff, it would warrant the jury in finding that defendant was guilty of "unskilful handling" of the car. This, under some of the authorities cited by defendant, would be negligence. We therefore conclude that the evidence was sufficient to sustain the verdict, and justified the giving of instruction No. 3.

2. Error in refusing to give defendant's requests 6 and 7. To have given these instructions would have been tantamount to directing a verdict for the defendant. They were properly refused.

3. It is urged that the court erred in its statement of the issues, by reciting the averments in the petition with reference to negligence on the part of the conductor. It is argued that, as the court intended to withdraw this issue from the jury and submit only the negligence of the motorman, the allegations in relation to such issues should not have been embodied in the charge of the court to the jury. We agree with counsel in this contention; but we are unable to see how the action of the court could have prejudiced defendant. Instruction No. 1 is a brief statement of the substance of the allegations in the petition as to what was said and done by plaintiff when she entered the car, and as to the action of the conductor in starting the car before she had time to alight. It then properly states the allegations as to the negligence of the motorman. If the trial court had not, by the most explicit and unqualified language, eliminated from the case everything but the allegation of negligence on the part of the motorman, and limited the jury to a consideration of that charge of negligence alone, there would be good ground for the complaint made. But we are unable to see how the court could more clearly have told the jury that they were not at liberty to consider anything in the pleadings or in the evidence, except the allegation of negligence on the part of the motorman and the evidence pertaining thereto, than was done in instruction No. 3, above set out. We think this

instruction relieved the case of any error there may have been in reciting in the statement of the case the allegations of the petition as to other acts of negligence.

4. The fourth assignment is based upon instruction No. 4½, in which it is argued that the court erred in defining the effect of contributory negligence. This assignment cannot be considered, for the reason that the instruction now complained of was not excepted to by defendant at the time it was given, nor called to the attention of the trial court in the motion for a new trial.

5. By the fifth assignment it is urged that the verdict and judgment are excessive. At the time of the accident plaintiff was 38 years of age. The testimony shows that she had not yet reached the age of 40 years at the time of the trial. She had suffered from Pott's disease in her childhood, and there is some medical testimony to the effect that at the time of the trial she was still troubled with that disease. She also had quite a curvature of the spine. This curvature was such that she was commonly known as a "hunchback." She had been in this condition since she was ten months old. The evidence shows that for many years she had supported herself; that for some time prior to and at the time of receiving her injury she was earning "from $75 a month up," which would be from $900 to $1,000 a year. Her disease had apparently spent its force many years prior to the injury complained of, and no longer affected her general health or interfered with her performing the duties of the several avocations in which she had been engaged. She testified that for about five years she was in the millinery business; that for about three years she was cashier and bookkeeper for a mercantile company; that one year she was saleslady and had charge of the books in a grocery store; that at one time she carried on a cut-flower department in one of the leading stores; that she worked for an eastern firm, introducing a treatment that she understood; that at the time of the injury she was a representative of the Vimedia Company of Kansas City, introducing it in the city of Omaha. She was asked, and

Payne v. Chicago, M. & St. P. R. Co.

answered, the following questions: "Q. From the time that you can remember up until the time that you met with the injury that you complain of, what has been your general health? A. Most always very good. Q. State whether or not you were at any time, on account of the condition of your back or your spine, prevented from doing the work that you had before you? A. I never remember any time at all in my life. Q. And any disability was always outside of that, as I understand it? A. Yes, sir. Q. Was it temporary or was it of a permanent, lasting character? A. Oh, just a day or so. Q. How did you feel generally? Were you active or otherwise? A. Very, very active on my feet. Q. How has your mind been? A. Very active." In the light of this testimony, we think the jury would be warranted in believing that she had a fair chance of at least living out her expectancy of life, which was 28 years. Considering that expectancy, and the amount of money she was earning in her business, and adding to that the pain and suffering which she had endured and was sure to endure in the future, we cannot say that the verdict of $10,500 was excessive.

Finding no prejudicial error in the record, the judgment is

AFFIRMED.